JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
DANIEL BLANK, Bar No. 192457
TAYLOR FATHERREE, Bar No. 358709
LISSET M. PINO, Bar No. 346133
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:        Lisset_Pino@fd.org

Counsel for Geoffrey Giglio

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEOFFREY GIGLIO,<br><br>Defendant. | **Case No.:** CR 25–264 VC<br><br>**MOTION TO DISMISS UNDER THE FIRST AMENDMENT** |

TO: THE UNITED STATES, PLAINTIFF; AND CRAIG MISSAKIAN, UNITED STATES ATTORNEY; AND ASSISTANT UNITED STATES ATTORNEY GALEN PHILLIPS

PLEASE TAKE NOTICE that on July 7, 2026 at 2:00 p.m. in the courtroom of the Honorable Vince Chhabria, or as soon thereafter as the matter may be heard, counsel for Geoffrey Giglio will move the Court to dismiss the information against him on the grounds that the instant prosecution infringes on his First Amendment rights. This motion is based on the attached memorandum of points and authorities, the Constitution of the United States of America, applicable statutory and case law, and any argument made at the motion hearing.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .......................................................................................................... 1

III.    ARGUMENT............................................................................................................ 2

     A.    The Government Cannot Meet Its Burden To Show Either of Mr. Giglio's
        Messages Contain a True Threat.......................................................................... 3

          i.    The information does not adequately allege a subjective intent to
             threaten as to all counts.......................................................................... 4

          ii.    The message charged in Counts One, Two, and Three of the
             information objectively fails to state a true threat. .............................. 6

          iii.    The message charged in Count Four of the information objectively
             fails to state a true threat. .................................................................... 10

     B.    47 U.S.C. § 223(a)(1)(c) is Unconstitutional As-Applied ................................ 11

          i.    Section 223(a)(1)(C) is a content-based regulation on speech ........... 12

          ii.    At the very least, § 223(a)(1)(C) regulates the act of placing a phone
             call, which is subject to First Amendment protections as a speech-
             creating process................................................................................... 15

          iii.    Section 223(a)(1)(C) cannot survive strict scrutiny........................... 16

IV.    CONCLUSION........................................................................................................ 19

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ................................................................................... 1, 3, 19

*Bauer v. Sampson*,
  261 F.3d 775 (9th Cir. 2001) ................................................................................ 17

*Chiles v. Salazar*,
  146 S. Ct. 1010 (2026) ................................................................................ *passim*

*Cohen v. California*,
  403 U.S. 15 (1971) ................................................................................ 13-14

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ................................................................................ 4, 5-6

*Garcia v. Cnty. of Alameda*,
  150 F.4th 1224 (9th Cir. 2025) ................................................................ 13, 15, 16

*Helmann v. Codepink Women for Peace,* No. 2:24-CV-05704-SVW-PVC,
  2025 WL 3030582 (C.D. Cal. June 13, 2025) ................................................ 8-9, 10

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) ................................................................................ 18

*Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*,
  360 U.S. 684 (1959) ................................................................................ 19

*N.A.A.C.P. v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) ................................................................................ 7-8, 9

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  585 U.S. 755 (2018) ................................................................................ 12

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ................................................................................ 3

*Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*,
  496 U.S. 91 (1990) ................................................................................ 2-3

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists*,
  290 F.3d 1058 (9th Cir. 2002) ................................................................ 4, 9, 10

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025) (en banc) ................................................ 11, 15, 16

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ................................................................................ 11

*Reno v. Am. C.L. Union*,
   521 U.S. 844 (1997) ........................................................................................ 18-19

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ................................................................................ 6

*United States v. Alvarez*,
   567 U.S. 709 (2012) ........................................................................................... 11

*United States v. Bagdasarian*,
   652 F.3d 1113 (9th Cir. 2011) ..................................................................... *passim*

*United States v. Hunt*
   82 F.4th 129 (2d Cir. 2023) ................................................................ 7, 8-9, 10

*United States v. Martinez*,
   800 F.3d 1293 (11th Cir. 2015) (per curiam) ................................................. 5, 6

*United States v. Nukida*,
   8 F.3d 665 (9th Cir. 1993) .................................................................................... 2

*United States v. Osinger*,
   753 F.3d 939 (9th Cir. 2014) ........................................................................ 14, 15

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000) ..................................................................................... 16, 18

*United States v. Popa*,
   187 F.3d 672 (D.C. Cir. 1999) ..................................................................... *passim*

*United States v. Sheikh*,
   164 F.4th 629 (7th Cir. 2026) .............................................................................. 10

*United States v. Stahlnecker,* No. 20-50173,
   2021 WL 5150046 (9th Cir. Nov. 5, 2021) ......................................................... 14

*United States v. Toltzis,* No. 14-cr-00567,
   2016 WL 3479084 (N.D. Cal. June 27, 2016) ................................................. 9, 10

*Virginia v. Black*,
   538 U.S. 343 (2003) ............................................................................................. 3

*United States v. Waggy*,
   936 F.3d 1014 (9th Cir. 2019) .............................................................................. 14

*Watts v. United States*,
   394 U.S. 705 (1969) (per curiam) ................................................................ 6, 7, 8

**Federal Rules**

Federal Rule of Criminal Procedure 7 ........................................................................ 4

Federal Rule of Criminal Procedure 12 ....................................................................... 2

**Federal Statutes**

18 U.S.C. § 115 ............................................................................................... 1, 2

18 U.S.C. § 875 ............................................................................................... 1, 2

18 U.S.C. § 2261A ............................................................................................. 15

47 U.S.C. § 223 ........................................................................................... *passim*

**Other Authorities**

5 Calls,
    *Why Calling Works,* available at https://5calls.org/why-calling-works/ ................................ 17

Christianna Silva,
    *Why TikTok Wants You To Call Your Representatives*, Mashable (Mar. 7, 2024),
    available at https://mashable.com/article/tiktok-call-your-representatives-ban-shutdown ..... 17

Jamie Ptacek*,
    Sway Your Member of Congress With A Calling Campaign* (Feb. 26, 2020), available at
    https://citizensclimatelobby.org/blog/advocacy/sway-congress-calling-campaign/ ............... 17

Wright & Miller,
    *Fed. Prac. & Proc. Crim*. (5th ed.) ...................................................................... 4, 5

## I.  INTRODUCTION

The Supreme Court has long recognized that, contrary to the protections of the First Amendment, "a law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). In this case, the government charges Geoffrey Giglio in four counts for two phone calls to U.S. Representative Eric Swalwell's public office phone number. Undoubtedly, Mr. Giglio's statements contain offensive language. Many would find his choice of words distasteful. But, for constitutional purposes, he made no true threats or otherwise unprotected comments. Where, as here, pure speech amounts to nothing more than a histrionic rant, the First Amendment simply does not permit a criminal prosecution. Dismissal of each of the charges is therefore required.

In addition, Count Three charges Mr. Giglio with violating a statute that is itself constitutionally infirm. Under 47 U.S.C. § 223(a)(1)(C), it is a crime for one person to call another, without disclosing their identity, with the intent to "abuse, threaten, or harass." As applied to the facts of this case, the statute functions as a content-based regulation of speech. And because § 223(a)(1)(C) applies so broadly, the statute cannot survive the demanding strict scrutiny standard. Accordingly, the prosecution of Mr. Giglio on Count Three cannot proceed.

For these reasons, the Court must dismiss all charges against Mr. Giglio.

## II.  BACKGROUND

On July 22, 2025, a criminal complaint was filed against Mr. Giglio, alleging that he made a variety of threats in violation of 18 U.S.C. § 115(a)(1)(B); 18 U.S.C. § 875(c), and 47 U.S.C. § 223(a)(1)(C). Dkt. 1. Mr. Giglio was arrested on July 29, but he was soon released on bond. Dkts. 5, 7. He waived indictment and was subsequently arraigned on an information. Dkt. 9, 10.

The information charges Mr. Giglio with four counts relating to telephonic statements in one voicemail and one live call, both of which were made to Eric Swalwell's California office. *See generally* Dkt. 8. Counts One, Two, and Three charge that, on March 27, 2025, Mr. Giglio called the office and left an anonymous voicemail stating:

> Now, the system is rigged but here's what's going to happen. If you keep fighting
> and you manage to use what you do and manipulate, then we will come get you.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

1

There will be the war that you want. We will never let you go back. So I'm fine with anything at this point. I'm tired of it. I'll just set up behind my .308 and I'll do my job.

*See* Dkt. 8 at 1-3. The Information charges that, in so doing, Mr. Giglio violated 18 U.S.C. § 115(a)(1)(B) (Influencing Federal Official by Threat); 18 U.S.C. § 875(c) (Interstate Communications with a Threat to Kidnap or Injure); and 47 U.S.C. § 223(a)(1)(C) (Anonymous Telecommunications Harassment).

Count Four charges that, on June 13, 2025, Mr. Giglio called Mr. Swalwell's office and made the following statement to a member of the staff: "Tell Eric Swalwell that we are coming and that we are going to handle everyone. We are going to hurt everyone. We are coming to hurt them. Goodbye." Dkt. 8 at 4. The information charges that this violated 18 U.S.C. § 115(a)(1)(B) (Influencing Federal Official by Threat).

Trial is set for August 10, 2026. Dkt. 26. The Court directed the defense to file any opening pretrial motions by May 21, 2026. Dkt. 31. This motion follows.

## III.  ARGUMENT

Rule 12(b) of the Federal Rules of Criminal Procedure allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Motions raising defects in "instituting the prosecution" and "in the indictment or information" must be raised before trial. Fed. R. Crim. P. 12(b)(3)(A), (B).

Accepting as true for purposes of this motion the allegations in the information, Mr. Giglio raises two legal challenges to the instant prosecution:

First, the statements alleged in the information are constitutionally protected speech and do not qualify as true threats. To proceed with this prosecution, the government must show that the statements fall outside the protection of the First Amendment. That is a legal question. *Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 108 (1990) (plurality) ("Whether the inherent character of a statement places it beyond the protection of the First

Amendment is a question of law"). Because the government cannot make this required showing as a matter of law, the Court must dismiss all charges in the information.

Second, the question whether 47 U.S.C. § 223(a)(1)(C) is a content-based regulation of speech as applied to the facts charged in the indictment is also a legal one. *See United States v. Popa*, 187 F.3d 672, 674-75 (D.C. Cir. 1999) (evaluating as-applied challenge to § 223(a)(1)(C) under de novo standard of review). Because the statute functions as a content-based regulation of speech and is too broad to survive strict scrutiny, it violates the First Amendment as a matter of law. Accordingly, the prosecution of Mr. Giglio on Count Three cannot proceed on this alternative ground.

### A. The Government Cannot Meet Its Burden To Show Either of Mr. Giglio's Messages Contain a True Threat

The First Amendment codifies our longstanding national commitment to the idea that "'freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth.'" *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964) (quoting *Whitney v. California,* 274 U.S. 357, 375-76 (1927) (Brandeis, J., concurring)). A statute that criminalizes speech "is a stark example of speech suppression" at odds with this principle. *Ashcroft*, 535 U.S. at 244. Courts must consider threat prosecutions "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan,* 376 U.S. at 270.

Only limited categories of speech are exempt from the protections of the First Amendment. As relevant here, the government may establish that a statement falls outside the protection of the First Amendment if it constitutes a true threat. *United States v. Bagdasarian*, 652 F.3d 1113, 1116 (9th Cir. 2011). That high threshold is met only when the "speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group." *Virginia v. Black,* 538 U.S. 343, 359 (2003). To prove that a statement constitutes a true threat, the government must make both an objective and a

subjective showing. Objectively, the Government must show that, "in the entire context and under all circumstances, a reasonable person would foresee" that the statement "would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm on that person." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002). Subjectively, the government must show that the defendant must acted with, at minimum, a reckless state of mind, consciously disregarding the "substantial risk that his communication[] would be viewed as threatening violence." *Counterman v. Colorado,* 600 U.S. 66, 69 (2023). A failure to prove either one of these two requirements means the statement is not a true threat and therefore may not be criminally prosecuted under the First Amendment.

In this case, the information fails both prongs. Starting with the subjective prong, the information is defective because it does not adequately allege that Mr. Giglio possessed the constitutionally required *mens rea*. And as for the objective prong, neither of the statements charged contains a specific threat of violence that a reasonable person would consider serious. For these reasons, the information must be dismissed.

### i. The information does not adequately allege a subjective intent to threaten as to all counts.

Federal Rule of Criminal Procedure 7 requires that the information be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. Proc. 7(c)(1). This means that every element of the charged offense must be stated. "If the statute itself does not state an essential element of the offense or includes it only by implication, a pleading that merely repeats the statutory language will be insufficient." Wright & Miller, Fed. Prac. & Proc. Crim. § 126 (5th ed.).

As noted above, the government is constitutionally required to prove that Mr. Giglio sent each of the above messages with at least a reckless state of mind—in other words, that he consciously disregarded a "substantial risk that his communication[] would be viewed as threatening violence." *Counterman,* 600 U.S. at 69. The information fails to charge the requisite mental state for any of the four charged counts.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

4

Counts One and Four relate to two different communications, but they suffer from the same defect: each count charges that the message was sent "with intent to impede, intimidate, and interfere" and "with intent to retaliate." Dkt. 8 at 1, 3. Neither of those descriptions of Mr. Giglio's purported intent suffices under *Counterman*, because they do not charge that he was aware his message could be interpreted as *violent*. *Counterman,* 600 U.S. at 69 (to act recklessly, the speaker must consciously disregard the "risk that his communication[] would be viewed as threatening violence.").

Someone can intend to impede, intimidate, interfere, or retaliate against another person without understanding that their words might cause a fear of violence in the listener. For instance, someone could make a statement with the intent to impede someone from performing their duties by making the listener realize their actions are morally wrong. Or the speaker might intend to intimidate someone with their intelligence. The speaker could intend to interfere with the person's performance of their duties by giving them erroneous information. Or they might intend to retaliate by threatening lawful action, such as going on strike. None of these actions involve the speaker being aware of the "risk that his communication[ ] would be viewed as threatening *violence*" and consciously disregarding said risk. *Counterman,* 600 U.S. at 69 (emphasis added). Because "the statute itself does not state an essential element of the offense," the information's mere repeating of the statutory language is not sufficient to properly charge the offense. Wright & Miller, Fed. Prac. & Proc. Crim. § 126; *see also United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) (per curiam) (indictment defective on First Amendment grounds where it repeated language of § 875(c) without alleging subjective mens rea).

Count Three suffers from the same defect. This Count charges that Mr. Giglio left a voicemail with intent to "threaten," but it does not allege that Mr. Giglio consciously disregarded a risk his words might be interpreted as a threat of *violence*. Dkt. 8 at 2; *Counterman,* 600 U.S. at 69; *see also id*. at 74 (emphasizing that true threats must engender "fear of violence"). Thus, the information fails to charge the requisite intent under *Counterman*.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

Count Two fares even worse. As pled in the information, it charges only that the relevant message was "knowingly and willfully transmit[ted]." Dkt. 8 at 2. This does not come close to what *Counterman* requires. *See Counterman,* 600 U.S. at 69 (speaker must have consciously disregarded the "risk that his communication[ ] would be viewed as threatening violence."). Accordingly, the information must be dismissed for failing to charge an offense. *See Martinez*, 800 F.3d at 1295 (dismissing similarly defective § 875(c) charge for failure to allege subjective mens rea).

### ii.    The message charged in Counts One, Two, and Three of the information objectively fails to state a true threat.

In addition to the requirement that the speaker recklessly disregard the risk that his message could be interpreted as a threat of violence, to constitute a true threat, the message must meet an objective standard. It must be understood by a reasonable listener as a "serious expression of an intent to commit an act of unlawful violence." *Bagdasarian*, 652 F.3d at 1116 (quoting *Black*, 538 U.S. at 359). Violent or inflammatory language alone is not enough to constitute a true threat. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 745-46 (9th Cir. 2021); *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam) (the First Amendment protects language that is "very crude [or] offensive," or "vituperative, abusive, and inexact."). True threats must engender "fear of violence"—this is the critical factor distinguishing them from jests, hyperbole, mere venting, "or other statements that when taken in context do not convey a real possibility that violence will follow." *Counterman*, 600 U.S. at 74.

In determining whether a statement is objectively sufficient to engender a real fear of violence, courts "look[] at the entire factual context of [the] statements including: the surrounding events, the listeners' reaction, and whether the words are conditional." *Bagdasarian*, 652 F.3d at 1122 (internal quotation marks and citation omitted). Also relevant is whether the speaker states that they personally intend to kill or injure others, rather than merely predicting that violence will occur. *Id.* at 1119 (noting that the statement "convey[ed] no explicit or implicit threat on the part of [the speaker] that he himself will kill or injure").

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

In addition, the more specific a message is, the more likely it is to be taken seriously. For instance, in *United States v. Hunt,* shortly after the January 6 riot, the defendant posted a video entitled "Kill Your Senators." 82 F.4th 129, 132 (2d Cir. 2023). The video stated, "we need to go back to the U.S. Capitol . . . and this time we have to show up with our guns and we need to slaughter these motherfuckers . . . If anybody has a gun, give me it. I will go there myself and shoot them and kill them." *Id.* at 133. In replies to comments on the video, and in subsequent videos, the defendant instructed others to "wear[] masks and camo," and to gather on a particular date—January 20, the date of the presidential inauguration. *Id.* The specificity of these plans clearly communicated to a reasonable listener that the defendant was not merely speaking hyperbolically, but rather was expressing a serious "intent to commit an act of unlawful violence." *Id.* at 137; *Bagdasarian*, 652 F.3d at 1122.

Applying those principles here, the Government cannot show that a reasonable person hearing Mr. Giglio's voicemail would have understood it to be a "serious expression of an intent to commit an act of unlawful violence," for a few reasons. *Bagdasarian*, 652 F.3d at 1122.

First, the statements in the voicemail use conditional wording and are premised on the occurrence of a hypothetical war that may or may not ensue at some unspecified point in the future. The voicemail states: "If you keep fighting and you manage to use what you do and manipulate, then we will come get you. There will be the war that you want." Dkt. 8 at 2. But courts have repeatedly held that these types of conditional statements are less likely to be interpreted by a reasonable listener as demonstrating a serious intent to carry out violent acts, precisely because they are worded in a conditional manner. *Cf. Bagdasarian*, 652 F.3d at 1119 (noting that defendant's statements were not conditional).

Indeed, the Supreme Court has twice found that similar conditional statements were subject to First Amendment protections. For instance, in *Watts*, a defendant speaking out against the Vietnam War stated "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Watts*, 394 U.S. at 706-07. And in *Claiborne Hardware*, an activist urging Black community members to boycott white businesses told listeners "[i]f we catch any

of you going in any of them racist stores, we're gonna break your damn neck." *N.A.A.C.P. v. Claiborne Hardware Co*., 458 U.S. 886, 902 (1982).

In both contexts, it was clear that neither speaker actually wanted to cause anyone harm. In *Watts*, the speaker's statements were "expressly made conditional upon an event—induction into the Armed Forces—which petitioner vowed would never occur." *Watts*, 394 U.S. at 707. Same with *Claiborne Hardware*: though the speaker said people who broke the boycott would be harmed, the thrust of his message was urging people to join the boycott. *Claiborne Hardware*, 458 U.S. at 902. Given the circumstances, it was evident that the conditional statement was not actually an expression of intent to be violent, but merely an expression of profound discontent with the idea of the referenced event occurring.

The same is true here. Mr. Giglio's voicemail stated that *if* the war began, harm would ensue. Dkt. 8 at 2. But Mr. Giglio opposed such a war. *See id*. (referring to "the war that *you* [Swalwell] want") (emphasis added). Thus, the implication of his message was not that Mr. Giglio was expressing a serious "intent to commit an act of unlawful violence," but rather that he wanted to avoid violence. *Bagdasarian*, 652 F.3d at 1122.

Second, the message is notably vague. There is no mention of when this supposed war will happen or who the fighters will be. There is a clear difference between "vague expressions of protest" and "direct, credible threats." *Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582, at *14 (C.D. Cal. June 13, 2025). Here, Mr. Giglio's statements were so hyperbolic and lacking in detail that a reasonable person would dismiss them as exaggerated rhetoric.

True threats are realistic and specific. For instance, the defendant in *Hunt* spoke in great detail about his plans to kill U.S. Senators. He named a particular, credible date—January 20, the date of President Biden's inauguration. *Hunt,* 82 F.4th at 133. In urging others to join him, he suggested they come "wearing masks and camo, concealed carry, body armor and just blast them all away." *Id*. A reasonable person reading Hunt's message would understandably fear that he might carry out his plan. A reasonable person reading a message rambling half-coherently about a hypothetical war breaking out would not understand that to be a serious

threat of violence. *See Helmann*, 2025 WL 3030582, at *14 (finding that "political hyperbole" did not constitute a true threat because it was "expressly conditional" and "too imprecise").

Third, this is not a case where the speaker "emphatically stated his own violent intent." *Hunt*, 82 F.4th at 137. At most, the voicemail contains a general statement that "we will come get you" and "never let you go back." Dkt. 8 at 2. It does not specifically state that Mr. Giglio himself intended to kill or injure Mr. Swalwell. *Cf. Hunt*, 82 F.4th at 137 (finding true threat where defendant threatened to "show up with . . . guns," to "slaughter these moutherfuckers [sic]," and stated "*I* will go there myself and shoot them and kill them."); *see also Claiborne Hardware*, 458 U.S. at 902 (threatening to "break your damn neck.").

Mr. Giglio did state that, if a war broke out, he would "set up behind [his] .308 and . . . do [his] job." Dkt. 8 at 2. But again, this does not indicate that Mr. Giglio personally intended to shoot Swalwell. It merely indicates a grudging intent to participate in this (hypothetical) war. *Cf. Hunt*, 82 F.4th at 137 (finding true threat where defendant said "*I* will go there myself and shoot them and kill them.").

Finally, a reasonable person would be even less likely to consider the message a true threat after considering its context. *See Planned Parenthood*, 290 F.3d at 1077-78 (considering the context of the message). Importantly, Mr. Giglio did not call Mr. Swalwell's home phone, appear outside his home, or speak these words to him directly. *Cf. United States v. Toltzis,* No. 14-cr-00567, 2016 WL 3479084, at *4 (N.D. Cal. June 27, 2016) (Toltzis mailed letters directly to the homes of the victims, which the court found more threatening). Instead, Mr. Giglio placed a call to Mr. Swalwell's publicly-listed office phone number. Dkt. 8 at 1-2. He did so from the opposite side of the country, and he did not speak directly to anyone—he merely left a voicemail. Dkt. 8 at 1-2 (charging Mr. Giglio with leaving a voicemail for Swalwell's California office, while Giglio was located in Florida). Those circumstances, coupled with the message's use of conditional, unspecific language, would not lead a reasonable person to conclude that the message constituted a serious expression of intent to cause physical harm.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

9

### iii.   The message charged in Count Four of the information objectively fails to state a true threat.

The second telephonic statement suffers from similar issues. As a reminder, the message states: "Tell Eric Swalwell that we are coming and that we are going to handle everyone. We are going to hurt everyone. We are coming to hurt them. Goodbye." Dkt. 8 at 3.

At the outset, the language of this message is incredibly vague—it does not describe what will happen other than to say people will be "hurt." It does not provide any sense of who the "we" is that will be carrying out the threat, or when they are coming. As such, the statement is simply "too imprecise" to constitute a true threat. *Helmann*, 2025 WL 3030582, at *14.

The contrast to statements that have been found to be a true threat is striking. For instance, in *United States v. Sheikh,* the defendant stated: "On August 23rd, 2019, I will go to the WOMANS AID CENTER in Chicago on peterson. I will proceed to slaughter and murder any doctor, patient, or visitor I see in the area." *United States v. Sheikh*, 164 F.4th 629, 633 (7th Cir. 2026). This statement was specific as to the date and location in which the defendant would carry out his threat, and he was very clear about what he intended to do. *See id.* ("This is not a joke"; "I post what I mean and i WILL carry out what I post"). So too with the defendant in *Hunt*, who articulated a plan to show up to the Biden inauguration on January 20, stated what he would be wearing, and was very clear about his plans to slaughter and kill U.S. senators. *Hunt*, 82 F.4th at 133. Here, without anything resembling that level of specificity, a reasonable listener would not have understood Mr. Giglio to be expressing a serious intent to commit an act of violence. *Bagdasarian*, 652 F.3d at 1122; *Helmann*, 2025 WL 3030582, at *14.

That is particularly true given the statement's context. *See Planned Parenthood*, 290 F.3d at 1078. As with the first message, Mr. Giglio allegedly made the charged statements during a call to Mr. Swalwell's publicly-listed office phone number. Dkt. 8 at 1-2. He did not call Mr. Swalwell's home phone, appear outside his home, or speak these words to him directly. *Cf. Toltzis*, 2016 WL 3479084, at *4 (N.D. Cal. 2016) (letters mailed directly to the homes of the victims were found more threatening). This physical distance, coupled with the

vagueness of the statements, would have led a reasonable listener to conclude the speaker was not seriously intending to commit a violent act.

For these reasons, neither of the two messages charged in the information meets the objective definition of a true threat. The information must therefore be dismissed in its entirety.

**B.  47 U.S.C. § 223(a)(1)(c) is Unconstitutional As-Applied**

In addition to the arguments raised above, Count Three must in the alternative be dismissed because § 223(a)(1)(c) violates the First Amendment as applied to Mr. Giglio.

To establish that a statute is unconstitutional on its face, a challenger must meet a "rigorous standard," showing that "'a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025) (en banc), *cert. denied sub nom. Project Veritas v. Vasquez*, 146 S. Ct. 90 (2025) (cleaned up). By contrast, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the [challenger's] particular speech activity, even though the law may be capable of valid application to others." *Id.* at 939-40 (9th Cir. 2025) (internal citations omitted). In this case, Mr. Giglio does not contest that § 223(a)(1)(c) can be constitutionally applied to others—for instance, persons who make a series of phone calls, without making any statement, purely to annoy or harass the recipient. However, as applied to the two phone calls Mr. Giglio made, § 223(a)(1)(c) is a content-based regulation on speech that fails strict scrutiny.

The Supreme Court "has long held that laws regulating speech based on its subject matter or 'communicative content' are 'presumptively unconstitutional.'" *Chiles v. Salazar*, 146 S. Ct. 1010, 1021 (2026) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Such content-based restrictions on speech are subject to strict scrutiny, a demanding standard that requires the government to prove its restriction on speech is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. This rule is subject to only a "few and narrowly drawn" series of exceptions: obscenity, defamation, fraud, incitement, child pornography, fighting words, speech integral to criminal conduct, and true threats. *Chiles*, 146 S. Ct. at 1021; *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality opinion).

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

11

For the reasons discussed above, Mr. Giglio's statements do not qualify as true threats and are therefore protected by the First Amendment. And, as applied to those statements, § 223(a)(1)(c) functions as a content-based restriction on speech.

### i. Section 223(a)(1)(C) is a content-based regulation on speech

Under § 223(a)(1)(c), a person commits a federal crime punishable by two years in prison if he "utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person." As discussed above, the information charges that Mr. Giglio violated this statutory provision by calling Mr. Swalwell's office and, without identifying himself, making the following statement:

> Now the system is rigged but here's what's going to happen. If you keep fighting and you manage to use what you do and manipulate, then we will come get you. There will be the war that you want. We will never let you go back. So I'm fine with anything at this point. I'm tired of it. I'll just set up behind my .308 and I'll do my job.

Dkt. 8 at 2-3.

In this case, § 223(a)(1)(C) functions as a content-based regulation on Mr. Giglio's speech, for two reasons. First, by its terms, the statute bars only anonymous phone calls. 47 U.S.C. § 223(a)(1)(c). Thus, accepting the allegations in the information as true, Mr. Giglio would not have violated the statute if he had disclosed his identity. But courts have repeatedly found that required disclosures constitute content-based regulations on speech. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) ("compelling individuals to speak a particular message" alters the content of speech and is therefore a content-based regulation); *Popa*, 187 F.3d at 675-76. By requiring Mr. Giglio to identify himself, § 223(a)(1)(C) plainly regulated the content of his statements.

Second, the statute applies only to those anonymous calls that are made with "intent to abuse, threaten, or harass" a "specific person." 47 U.S.C. § 223(a)(1)(c). But short of mind reading, the only way the government can determine whether the requisite intent existed is to review what the accused said. That is precisely why the information includes the content of Mr. Giglio's speech in the charge under Count Three. Dkt. 8 at 2-3. But when a law requires that

law enforcement "examine the content of the message that is conveyed to determine whether a violation has occurred," that clearly shows the law "is content based." *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1232 (9th Cir. 2025) (cleaned up). Applying that principle here, § 223(a)(1)(C) is a content-based regulation on Mr. Giglio's speech.

It is no answer to say that § 223(a)(1)(C) criminalizes conduct—the act of making a phone call—rather than speech. Though § 223(a)(1)(C) *can* apply regardless of whether communication ensues, what matters for the purposes of Mr. Giglio's as-applied challenge "is whether, in fact, the law regulates speech in the case at hand." *Chiles*, 146 S. Ct. at 1024. In this case, it does.

The Supreme Court's recent opinion in *Chiles* is instructive. There, a therapist challenged a Colorado statute that banned "any practice"—including talk therapy—that attempts to "change an individual's sexual orientation or gender identity." *Id*. at 1018. The Court held that, as applied to *Chiles*, the statute was a content-based regulation that did not survive strict scrutiny. *Id*. at 1021, 1023. In so holding, the Court reasoned that "the spoken word is perhaps the quintessential form of protected speech." *Id*. at 1023. Because Colorado law prevented Chiles from "speak[ing] in any way that attempts to change a client's "sexual orientation or gender identity," it necessarily "regulate[d] the content of [her] speech." *Id*.

Notably, the Court rejected the idea that Colorado could regulate what therapists say to their clients because such speech is actually "treatment" and therefore constitutes only "conduct." *Id*. at 1023. As the Court explained, "[t]he First Amendment is no word game. And the rights it protects cannot be renamed away or their protections nullified by mere labels." *Chiles*, 146 S. Ct. at 1023.

One of the primary decisions relied upon in *Chiles* was *Cohen v. California*, which this case strongly resembles. *See* 403 U.S. 15 (1971); *Chiles*, 146 S. Ct. at 1022. There, California had charged the defendant disturbing the peace because he wore a jacket bearing the words "Fuck the Draft." *Id*. at 16. The statute was clearly directed primarily at conduct—"[o]ften . . . a person disturbs the peace through conduct alone," such as brawling. *Chiles*, 146 S. Ct. at 1022. And one could certainly argue that the defendant's crime (wearing a jacket) was only

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

13

conduct and not speech. But the Court declined to uphold the law based on such a facile distinction. As the Court recognized, what rendered the defendant's behavior illegal was the content of the speech he displayed. *Cohen*, 403 U.S. at 18 ("The conviction quite clearly rests upon the asserted offensiveness of the words Cohen used to convey his message to the public."). After all, if Cohen's jacket had read something entirely innocuous, such as "I love ponies," his conduct would have been perfectly legal. Cohen was prosecuted because of what his jacket said: "Fuck the Draft." Accordingly, as applied to Cohen, the disturbing the peace statute operated as a content-based regulation of speech. *Cohen*, 403 U.S. at 18-19.

The same is true here. The criminal penalties imposed by § 223(a)(1)(C) would not apply if Mr. Giglio had said something different. A hypothetical helps prove the point. Imagine that Mr. Giglio engaged in the exact same conduct alleged: on March 27, 2025, he called Mr. Swalwell's office and left a voicemail. Dkt. 8 at 2. He did so with the requisite intent to harass. He complied with the statute's identification requirement. But the rest of the voicemail's content was different. Imagine that, rather than rambling about a war, Mr. Giglio simply said "I love ponies." A criminal prosecution would be inconceivable. This demonstrates that § 223(a)(1)(C) is a content-based restriction on speech as applied to Mr. Giglio. *See Chiles*, 146 S. Ct. at 1024 (what matters for First Amendment purposes, "is whether, in fact, the law regulates speech in the case at hand.").

Importantly, the Ninth Circuit has yet to resolve the question of whether § 223(a)(1)(C) is constitutional as applied where, as here, the intent of the defendant is proven only with reference to the content of his statements. The issue was presented on plain error review in *United States v. Stahlnecker*, but the panel rejected the defendant's challenge to his conviction on the grounds that any error was not plain—precisely because the question remains an open one in this circuit. *See* No. 20-50173, 2021 WL 5150046, at *3 (9th Cir. Nov. 5, 2021).[1] Thus,

---

[1] The Ninth Circuit decisions that have come the closest to resolving this question are *United States v. Waggy* and *United States v. Osinger*, but neither is squarely on point. *Waggy* involved an as-applied challenge to a Washington state law criminalizing phone calls using profane or lewd language, and the Ninth Circuit expressly deferred to the state courts' determination that the law regulated conduct rather than speech. *See Waggy*, 936 F.3d 1014, 1018 (9th Cir. 2019).

this Court must independently evaluate whether § 223(a)(1)(C) complies with the requirements of the First Amendment by applying strict scrutiny. *See Chiles*, 146 S. Ct. at 1021.

### ii. At the very least, § 223(a)(1)(C) regulates the act of placing a phone call, which is subject to First Amendment protections as a speech-creating process.

Even if the Court disagrees that § 223(a)(1)(C) as applied regulates Mr. Giglio's speech, the law is still a content-based restriction subject to strict scrutiny because it regulates a protected speech-creating process: the act of placing a phone call. The Ninth Circuit's recent opinion in *Garcia v. County of Alameda,* 150 F.4th 1224 (9th Cir. 2025), explains why. At issue in *Garcia* was a county ordinance making it a crime for "any person from knowingly spectating a sideshow event conducted on a public street or highway from within 200 feet of that event." *Id.* at 1227. The Ninth Circuit held the law was unconstitutional as applied to a reporter who sought to observe and record sideshows. *Id*. at 1230-31. The Court expressly rejected the idea that the ordinance was directed at conduct (observing and recording) rather than speech. *Id*. at 1231. As the Court correctly observed, the Supreme Court has never distinguished between "the *process* of creating a form of pure speech (such as writing or painting) and the product of [said] processes (the essay or the artwork) in terms of the First Amendment protection afforded." *Id*. at 1230 (cleaned up). After all, "[i]f restrictions on speech-creation processes did not implicate the First Amendment, governments "could effectively control or suppress speech by the simple expedient of restricting an early step in the speech process rather than the end result." *Project Veritas*, 125 F.4th at 943 (internal quotation marks and citation omitted). In other words, because Garcia had a First Amendment right to speak and report on the sideshows, the First Amendment also protected his ability to observe and record the sideshows. *Garcia*, 150 F.4th at 1231. That was the case even though observing and recording an event are plainly conduct, not speech.

That principle applies with equal force here. Even if this Court disagrees that § 223(a)(1)(C) as applied in this case regulated the contents of Mr. Giglio's speech, it is beyond

---

And *Osinger* rejected a challenge to a *different* federal statute (18 U.S.C. § 2261A) on *different* grounds (vagueness). *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014).

dispute that the conduct the statute criminalizes is the act of placing a phone call. Generally, a phone call is made in order to speak to the person on the other end of the line—and indeed, that is precisely why Mr. Giglio made the call, as evidenced by the fact that he left a voicemail. Much like making a recording, a phone call is quite clearly a "speech-creation" process that implicates the First Amendment. *See Project Veritas*, 125 F.4th at 943 (the act of making an audio recording is a protected speech-creating process); *Garcia*, 150 F.4th at 1232 (reaching the same conclusion for video recordings). Because § 223(a)(1)(C)'s penalties vary entirely based on content, strict scrutiny remains the correct standard, even if the statute is construed to implicate a speech-creating process rather than speech itself. *See Garcia*, 150 F.4th at 1232 (content-based sideshow ordinance was subject to strict scrutiny).

### iii.    Section 223(a)(1)(C) cannot survive strict scrutiny.

As discussed above, because § 223(a)(1)(C) is a content-based regulation on speech (or speech-creating processes), it may be upheld only if it satisfies strict scrutiny. This "demanding standard" places the burden on the government "to prove its restriction on speech is narrowly tailored to serve compelling state interests." *Chiles*, 146 S. Ct. at 1021 (cleaned up). "If a less restrictive alternative would serve the [g]overnment's purpose," the statute fails strict scrutiny and "the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 813 (2000). "It is rare that a regulation restricting speech because of its content will ever be permissible." *Id*. at 818.

The government has previously represented that its interest in § 223(a)(1)(c) was "limited to protecting individuals from noncommunicative uses of the telephone, such as tying up someone's line with a flood of calls, each of which is terminated by the caller as soon as it is answered." *Popa*, 187 F.3d at 677. Even assuming for the sake of argument that this is a sufficiently "compelling" interest, the statute cannot survive strict scrutiny, as it is far broader than required to protect that interest.

If the government's aim was truly to protect individuals from "noncommunicative uses of the telephone," the most narrowly tailored way to accomplish that goal would be to enact a statute barring anyone from causing another's telephone to ring repeatedly without speaking.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

16

But § 223(a)(1)(C), by its terms, applies "whether or not . . . conversation or communication ensues." *See id*. The statute thus sweeps speech within its reach, even though doing so is not necessary to accomplish the government's interest in protecting the public from phone calls that tie up phone lines.

Another feature that makes § 223(a)(1)(C) broader than necessary is the fact that it makes no exception for political speech. To give just one example, advocacy organizations frequently organize concerted phone call campaigns, urging voters to call their representatives in order to drum up congressional support for certain issues.[2] These phone campaigns work: When constituents call, politicians listen.[3] But under § 223(a)(1)(C), a caller commits a crime if he only identifies himself as a constituent (without providing his name) and speaks with the "intent to verbally 'abuse' a public official for voting a particular way on a public bill, 'annoy' him into changing a course of public action, or 'harass' him until he addresses problems previously left unaddressed." *Popa*, 187 F.3d at 677. By proscribing this type of especially protected speech, § 223(a)(1)(C) criminalizes far more speech than necessary to achieve the limited goal of preventing people from tying up phone lines.

And the problems with § 223(a)(1)(C) are not unique to political speech. Speech involving matters of public concern also enjoys "robust" First Amendment protection. *See Bauer v. Sampson*, 261 F.3d 775, 783 (9th Cir. 2001), *amended*, (9th Cir. Oct. 15, 2001). But under § 223(a)(1)(C), a television watcher would violate the statute if he called Jimmy Kimmel with the intent to annoy him for calling First Lady Melania Trump an "expectant widow" on his show. Part of the issue is that the statute broadly sweeps in any call where the caller does not affirmatively "disclos[e] his identity." *See* 47 U.S.C. § 223(a)(1)(C). But not all anonymous

---

[2] *See, e.g.*, Christianna Silva, *Why TikTok Wants You To Call Your Representatives*, Mashable (Mar. 7, 2024), available at https://mashable.com/article/tiktok-call-your-representatives-ban-shutdown (TikTok urged users to advocate against legislation that would ban TikTok by calling their representatives).

[3] *See, e.g.,* 5 Calls, *Why Calling Works*, available at https://5calls.org/why-calling-works/; Jamie Ptacek, *Sway Your Member of Congress With A Calling Campaign* (Feb. 26, 2020), available at https://citizensclimatelobby.org/blog/advocacy/sway-congress-calling-campaign/.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

17

calls are nefarious; a caller might simply forget to identify themselves. Yet, the statute paints all anonymous calls with the same broad brush.

Finally, the statute protects all recipients of anonymous calls equally, even though they are not all similarly situated. Even if the government could show that the statute's heightened protections are necessary to protect private individuals from harassment, plenty of companies and public figures have publicly-listed phone numbers that exist specifically to allow anyone who wishes to call and complain, even if such complaints might annoy the listener. Yet, § 223(a)(1)(C) applies regardless of whether a phone number is publicly-listed, and regardless of whether the call recipient is a government official, a public figure, or a mere corporation.

As these examples illustrate, far from being narrowly tailored, § 223(a)(1) criminalizes vast swaths of speech. The government could substantially narrow the statute without compromising its goal of preventing phone lines from being tied up in a variety of ways. The statute could be limited to phone calls that target private (rather than publicly-listed) numbers, apply only to phone calls where no words are spoken, or apply only where the caller refuses to disclose their identity upon request. The statute could also require a pattern of calls, rather than permitting liability after a single phone call. It could require some proof that the calls caused harm or distress to the recipient. Or, at the very least, it could carve out an exception for political speech and speech involving matters of public concern. Any of these "less restrictive alternative[s] would serve the [g]overnment's purpose" equally well. *Playboy*, 529 U.S. at 813. Yet none of them have been adopted.

This over-inclusiveness is fatal to the statute. *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) ("[B]ecause restricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive.") (internal quotation marks and citation omitted). And that is particularly true because violators of § 223(a)(1)(C) are subject to criminal (and not merely civil) penalties. It is well-established that statutes imposing criminal penalties on speech pose heightened First Amendment concerns. *Reno v. Am. C.L. Union*, 521 U.S. 844, 872 (1997). This is because "[t]he severity of criminal sanctions may well cause speakers to remain silent rather than

communicate even arguably unlawful words, ideas, and images." *Id*. (internal quotation marks and citation omitted). To prevent undue restrictions on protected speech, it is especially important that such statutes be narrowly tailored. That requirement is quite clearly not met here. Accordingly, § 223(a)(1)(C) fails strict scrutiny.[4]

In a free society, "the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech." *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U.S. 684, 689 (1959) (cleaned up). The mere "prospect" that some callers might use the telephone to harass and annoy others does not justify imposing criminal liability on broad swaths of "protected speech." *Ashcroft*, 535 U.S. at 245. Because § 223(a)(1)(C), as applied here, is a content-based regulation on speech that is not narrowly tailored to meet a compelling government interest, Mr. Giglio cannot legally be prosecuted under this statute. Count Three of the information must be dismissed.

## IV. CONCLUSION

For the aforementioned reasons, Mr. Giglio respectfully urges the Court to grant his motion to dismiss the information on First Amendment grounds.

Respectfully submitted,

<u>May 21, 2026</u>
Dated

JODI LINKER
Federal Public Defender
Northern District of California

<u>            /S            </u>
LISSET M. PINO
Attorney for Geoffrey Giglio

---

[4] Indeed, as the D.C. Circuit recognized in *Popa*, § 223(a)(1)(c) is so staggeringly broad that it fails even under the less demanding intermediate scrutiny standard. *Popa*, 187 F.3d at 677-78.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

19