CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ANNE C. HSIEH (CABN 288159)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5596
    FAX: (408) 535-5066
    Anne.Hsieh@usdoj.gov
    Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GEOFFREY CHAD GIGLIO, <br><br> Defendant. | ) Case No. 3:25-CR-00264-VC <br> ) <br> ) **UNITED STATES' OPPOSITION TO** <br> ) **DEFENDANT'S MOTION TO DISMISS** <br> ) <br> ) Hearing Date: July 7, 2026 <br> ) Hearing Time: 2:00 p.m. <br> ) Courtroom:    3, 17th Floor <br> ) <br> ) Hon. Vince Chhabria |

U.S. OPPOSITION TO MOTION TO DISMISS
3:25-CR-00264-VC

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND .........................................................................................................2

       A.     Charges and Procedural History .......................................................................2

       B.     Additional Relevant Facts.................................................................................3

III.   ARGUMENT...............................................................................................................5

       A.     The Information is Constitutionally Sufficient .................................................5

              1.     Each count in the Information sufficiently states an offense. ................7

              2.     The Information need not expressly allege a "subjective intent to
                     threaten" where it already sufficiently alleges the requisite mental state
                     for each offense. .........................................................................................9

              3.     Because a reasonable jury could find the statements alleged in the
                     Information constitute true threats, dismissal of the Information is not
                     appropriate at this stage. .........................................................................12

       B.     Section 223(a)(1)(C) is Constitutional As Applied to Giglio's Anonymous
              Harassing Calls ...............................................................................................16

              1.     Section 223(a)(1)(C) regulates Giglio's conduct....................................17

              2.     As applied to Giglio's harassing voicemail, § 223(a)(1)(C) reaches
                     only speech integral to criminal conduct. ..............................................20

              3.     Assuming the statute reaches speech as applied to Giglio, §
                     223(a)(1)(C) is not a content-based restriction. .....................................21

              4.     In any event, a reasonable juror could find that the speech constitutes a
                     true threat and is therefore unprotected. ................................................24

IV.    CONCLUSION..........................................................................................................25

**Table of Authorities**

**Cases**

*Chiles v. Salazar*, 146 S. Ct. 1010 (2026) ................................................................................... 21, 22

*Counterman v. Colorado*, 600 U.S. 66 (2023) ................................................................................. 9, 13

*United States v. Sandhu*, 740 F. App'x 595 (9th Cir. 2018) ............................................................. 17

*Fogel v. Collins*, 531 F.3d 824 (9th Cir. 2008) ............................................................................... 13

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) ......................................................... 16-17

*Garcia v. County of Alameda*, 150 F.4th 1224 (9th Cir. 2025) ...................................................... 23

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) .......................................................... 20

*McCalden v. Cal. Library Ass'n*, 955 F.2d 1214 (9th Cir. 1990) ................................................... 16

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*,
    290 F.3d 1058 (9th Cir. 2002) .............................................................................................. *passim*

*Project Veritas v. Schmidt*, 125 F.4th 929 (9th Cir. 2025) (en banc) ....................................... 21-22, 23

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................................................................ 21

*United States v. Sineng-Smith*, 910 F.3d 461 (9th Cir. 2018) ......................................................... 20

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................................... 16

*United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) ............................................. 13, 16, 13, 15

*United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) ..................................................................... 7

*United States v. Buckley*, 689 F.2d 893 (9th Cir. 1982) ............................................................... 8, 7

*United States v. Davis*, 336 F.3d 920 (9th Cir. 2003) .................................................................... 7, 8

*United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015) .............................................................. 15

*United States v. Gilbert*, 813 F.2d 1523 (9th Cir. 1987) ............................................................ 12, 10

*United States v. Givens*, 767 F.2d 574 (9th Cir. 1985) ................................................................ 7, 12

*United States v. Hanna*, 293 F.3d 1080 (9th Cir. 2002) ............................................................ 6, 7, 14

*United States v. Hansen*, 599 U.S. 762 (2023) ............................................................................... 20

*United States v. Hinton*, 222 F.3d 664 (9th Cir. 2000) .................................................................... 8

*United States v. Ho-Romero*, 167 F.4th 1037 (9th Cir. 2026) ........................................................ 13

*United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996) ...................................................................... 7

*United States v. Meredith*, 685 F.3d 814, 819, 823 (9th Cir. 2012) ............................................... 20

*United States v. Merrill*, 746 F.2d 458 (9th Cir. 1984) .............................................................. 10, 11

*United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993) ....................................................................... 6

*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) ................................................................ 20

*United States v. O'Brien*, 391 U.S. 367 (1968) ........................................................................... 24

*United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) ................................................................ 21

*United States v. Rogers*, No. 25-4001, 2026 WL 1429748 (9th Cir. 2026) ...................................... 17, 11

*United States v. Romo*, 413 F.3d 1044 (9th Cir. 2005) ................................................................ 15

*United States v. Rosi*, 27 F.3d 409 (9th Cir. 1994) ..................................................................... 7

*United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005) ............................................................. 12

*United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007) .............................................................. 14

*United States v. Turner*, 720 F.3d 411 (2d Cir. 2013) ................................................................. 15

*United States v. Waggy*, 936 F.3d 1014 (9th Cir. 2019) ........................................................ *passim*

*United States v. Weiss*, No. 20-10283, 2021 WL 6116629 (9th Cir. Dec. 27, 2021) ....................................... 17, 11

*United States v. Zavalidroga*, No. 97-10290, 156 F.3d 1241, 1998 WL 403361 (9th Cir. July 7, 1998) ............. 13

*Virginia v. Black*, 538 U.S. 343 (2003) .................................................................................. 15, 9

*Watts v. United States*, 394 U.S. 705 (1969) ............................................................................. 10, 14

**Statutes**

18 U.S.C. § 115 ......................................................................................................... *passim*

18 U.S.C. § 875 .......................................................................................................... 1, 2, 8, 10

18 U.S.C. § 2261A ...................................................................................................... 20

47 U.S.C. § 223 ......................................................................................................... *passim*

Washington Revised Statute § 9.61.230 ......................................................................... 18

**Rules**

Fed. R. Crim. P. 12 .................................................................................................... 3, 5, 6

Federal Rule of Criminal Procedure 7 ............................................................................ 7, 9

Federal Rule of Criminal Procedure 12 .......................................................................... 3, 5

## I.    INTRODUCTION

Defendant Geoffrey Chad Giglio ("Giglio") is currently charged via criminal Information with influencing a federal official by threat in violation of 18 U.S.C. § 115 (Counts One and Four), communicating a threat in violation of 18 U.S.C. § 875 (Count Two), and anonymous telecommunications harassment in violation of 47 U.S.C. § 223(a)(1)(C) (Count Three).  The charges stem from his conduct in March and June 2025, during which he telephoned the California office of now-former United States Representative Eric Swalwell ("Congressman Swalwell") and communicated harassing and threatening messages towards Congressman Swalwell and his staff.

Giglio now moves to dismiss the Information on First Amendment grounds, raising two primary arguments that ultimately fail.  His first argument—that all charges in the Information are insufficient and must be dismissed on "true threat" grounds—fails at the outset by conflating two separate questions: (i) whether the Information is insufficient for failure to state an offense, which would warrant dismissal at this stage, and (ii) whether the charged conduct constitutes a true threat, which is a fact-bound question that should be reserved for the jury at trial.  As further explained below, the Information in this case is constitutionally sufficient because it properly states an offense as to each count and puts Giglio on proper notice of the crimes that he must defend against.  Furthermore, because the facts alleged in the Information do not preclude a finding of a true threat, it cannot be dismissed at this stage as a matter of law.

Second, Giglio's as-applied challenge to the constitutionality of 47 U.S.C. § 223(a)(1)(C) also fails.  Section 223(a)(1)(C) satisfies the First Amendment, even as applied to Giglio's March 27, 2025 call, because the statute regulates conduct—specifically, Giglio's anonymous, intent-to-harass use of a telephone—and the speech integral to that conduct, and is not limited to true threats.  To the extent that the constitutionality of Giglio's criminal conduct under § 223(a)(1)(C) rests on a true threat theory, the Information alleges sufficient facts to leave the true-threats determination to the jury.

In sum, dismissal is inappropriate at this stage, and the motion should be denied in its entirety.

//

//

## II.    BACKGROUND

### A.    Charges and Procedural History

In August 2025, Giglio was charged by Information with four counts arising from two telephonic communications to Congressman Swalwell's district office, which is located in the Northern District of California.

Counts One, Two, and Three arise from a March 27, 2025 anonymous voicemail that Giglio left on Congressman's Swalwell's office line.  For each count, the Information quotes the voicemail as stating, in part:

> Now the system is rigged but here's what's going to happen. If you keep fighting and you manage to use what you do and manipulate, then we will come get you. There will be the war that you want. We will never let you go back. So I'm fine with anything at this point. I'm tired of it. I'll just set up behind my .308 and I'll do my job.

ECF-8 at 1–3.  Count One, which charges a violation of 18 U.S.C. § 115(a)(1)(B) (influencing a federal official by threat), alleges that Giglio "did threaten to assault, kidnap, and murder" Congressman Swalwell "with intent to impede, intimidate, and interfere with [Congressman Swalwell] while he was engaged in the performance of his official duties," and "with intent to retaliate against [Congressman Swalwell] on account of the performance of his official duties."  *Id*. at 1.  Count Two, which charges a violation of 18 U.S.C. § 875(c) (interstate communication of a threat to kidnap or injure), alleges that Giglio "knowingly and willfully" transmitted in interstate commerce "a communication which contained a threat to kidnap and injure" Congressman Swalwell, in violation of 18 U.S.C. § 875(c).  Count Three charges that Giglio made an anonymous telephone call "with intent to annoy, abuse, threaten, and harass" Congressman Swalwell, in violation of 47 U.S.C. § 223(a)(1)(C).  Each count quotes a portion of the voicemail: "Now the system is rigged but here's what's going to happen. If you keep fighting and you manage to use what you do and manipulate, then we will come get you. There will be the war that you want. … I'll just set up behind my .308 and I'll do my job."  *Id*. at 1–3.

Count Four, which alleges another violation of 18 U.S.C. § 115(a)(1)(B) (influencing a federal official by threat), arises from a June 13, 2025 live call to the same office, which was answered by a member of Congressman Swalwell's staff.  During the call, Giglio stated to the staff member: "Tell Eric

Swalwell that we are coming and that we are going to handle everyone.  We are going to hurt everyone.  We are coming to hurt them.  Goodbye." *Id*. at 3; ECF-1 at 7.

Giglio waived indictment and was arraigned on the Information.  ECF-9; ECF-10.  He now moves under Federal Rule of Criminal Procedure 12(b)(3) to dismiss all four counts, arguing that the charged statements are not true threats and that § 223(a)(1)(C) is unconstitutional as applied.  Accepting that the allegations of the Information as true, which the Court must at this stage, the motion should be denied.

**B.    Additional Relevant Facts**

As indicated by the facts alleged in the Complaint, the government's proof of Giglio's criminal conduct and intent exceeds what is alleged in the Information.  For example, on or about March 26, 2025, the day before the offense conduct in this case, Giglio left a voicemail at the office of the Michigan Secretary of State.  ECF-1 at 3.  In the voicemail, Giglio stated:

> [unintelligible], um [unintelligible] leaving a message for everybody. Please let Jocelyn know that we're coming for her fucking dumb ass. She's going to be in fucking prison. MAGA, baby. Coming for the cheatin' fucking white supremacists. The white, white, white racist left. Systemic racism and white privilege. Jocelyn Benson. Tell that whore we're coming for the bitch. You guys are done. All you faggot fucking liberals. You might not be, I'm sorry. You just might be stuck with those shitbirds. But if you're one, fuck you too.  Tell the bitch, daddy's coming, and we're going to fucking put her in a fucking hole. Fucking dirty cunt.

*Id*. at 3-4.

He then went on to leave two voicemails at Congressman Swalwell's district office in Castro Valley, California on or about March 27, 2025.  *Id*. at 4-6.  In the first voicemail, left at approximately 3:10 p.m., Giglio stated:

> Hey Eric, I don't want to fuck your wife. Anybody that would fuck you has to be a fucking cunt, a whore, or dumb as fuck. Your wife looks like all three and I don't fuck stupid chicks. I mean you got the first piece of Chinese pussy in your life, didn't you? She's a spy. You're one to talk about fuck ups. You childless little bitch. Keep talking though. You can see every time you talk I put you on a big screen and show a bunch of people your filthy lies and I show them what you did and I deprogram them you fucking faggot. I'd like to debate you fucking faggot. You'd like to fuck hot chicks bitch, I hope you get fucking fucked by a bunch of big black men. Tell them

it's reparations. That's what I'm gonna put on. Everybody can fuck Eric Swalwell in the back. All you black faggots. It's reparations. You'd like that, wouldn't you? You fucking fag. Fucking cock sucker. Pedophile. You like to fuck hot chicks. You like hot dudes to fuck you? Yeah, I bet that's the case you fucking freak. But you're such a geek. A little fucking retard. You're still that lispy little boy inside. But you are ugly. I mean I know you think your shit's cool. You're a fucking weak little man. You'd shit your pants in front of me faggot. See you later dick.

*Id*. at 4-5.

Shortly thereafter, Giglio left the voicemail that forms the basis of Counts One, Two, and Three of the Information at Congressman Swalwell's district office.  In the voicemail, Giglio stated:

Hey Eric, you're at the (unintelligible) and you don't like Mike Waltz and all the guys who had a smashing success taking out the Houthis that you didn't do anything with? Or should we have an operation like yours where we all watch it on TV and you let it go for days and you get a bunch of Americans killed? See, maybe you'll get hit by a bomb and that's not a threat. But I mean do you think we're going to keep listening to you and your foul mouth, a little faggot like you talking about, oh you only fuck hot chicks? Dude, you're a fucking faggot. You're a geek. You're a little lisper and you think you're cool now because you're in the Congress. You're a silly little faggot, Eric. We all see you. **Now, the system is rigged but here's what's going to happen. If you keep fighting and you manage to use what you do and manipulate, then we will come get you. There will be the war that you want. We will never let you go back. So I'm fine with anything at this point. I'm tired of it. I'll just set up behind my .308 and I'll do my job.** You want a war? Get your war started. There's no safe hours or breaks though. I'm going to sit in my (unintelligible). I probably won't need a diaper for you guys. I'll just lay in wait for days on end for you little faggots. I mean, I prefer not to but you just won't shut up, you little bitch. I'm making you known. You know, honestly, you are the biggest faggot in this country. You're a little lispy faggot voice. Boy, your wife looks like she'd be a good fuck and if she had some real dick, I'd make her squeal. Fuck, yeah.

*Id*. at 5-6.[1]  Subsequent investigation revealed that Giglio owned a .308 caliber rifle around the time that he left the above voicemail.  *Id*. at 6.

Then, on or about June 13, 2025, Giglio called Congressman Swalwell's district office again.  *Id*. at 7.  This time, however, a member of the Congressman's staff answered the phone.  *Id*.  During the

---

[1] The bolded portion is this voicemail is the charged language in Counts One, Two, and Three of the captioned Information.

call, Giglio told the staff member: "Tell Eric Swalwell that we are coming and that we are going to handle everyone. We are going to hurt everyone. We are coming to hurt them. Goodbye." *Id*.

About two weeks later, on or about June 26, 2025, Giglio called an FBI agent who was investigating Giglio's conduct and left two voicemails on the agent's phone. *Id*. at 8. In the first voicemail, Giglio stated: "Why are you looking for me? Maybe I'll find you before you find me." In the second voicemail, Giglio stated:

> I'm gonna make it real simple, I'm going to assume that you're not FBI, and you're trying to hurt me, which is, stupid. But, from this point on, I will be contacting the FBI every hour, on the hour tomorrow, starting tomorrow. I will be writing a full, basically an article, a timeline of what's gone down. And your, with and you're with your phone number I will post, with contacts with the FBI I will post. I will send them all to Dan Bongino, I will send them all to Kash Patel, I will post them all over X. Copy everybody, copy the media, all the biggest podcasters, I know some people too. I don't appreciate this bullshit, and, you shouldn't come looking for me.

*Id*. He then went on to send a text message to the FBI agent that ending with: "So now I'm coming for you. Fucking assholes." *Id*. at 8-9.

What is more is that Giglio is not new to these types of communications. As documented in the September 19, 2024 Reuters article about Giglio, he allegedly posted to Former President Joe Biden's Facebook page: "You TRIED TO KILL Trump," and later, "I hope you swing someday – you deserve it." *Id*. at 6. He also allegedly called United States Senator Cory Booker and said: "You come for us, asshole, we'll have to get rid of you filthy fucking progressive assfuckers." *Id*. at 7. And according to Reuters, Giglio told Reuters: "I push the envelope" and "If I have to go to jail because somebody thinks I'm really a threat, oh well, so be it." *Id*.

All of the above communications, and their context, go to the unprotected nature of the charged language in the Information, making the changed language in the Information ambiguous, at the very least, and worthy of jury consideration—not dismissal at this stage.

## III.   ARGUMENT

### A.   The Information is Constitutionally Sufficient

Federal Rule of Criminal Procedure 12(b) permits a defendant to "raise by pretrial motion any

defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3) also requires certain pretrial motions to be made before trial, including motions to dismiss based on "a defect in the indictment or information, including . . . failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).  "A motion to dismiss is generally 'capable of determination' before trial 'if it involves questions of law rather than fact.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)).  Where a pretrial challenge is "substantially founded upon and intertwined with evidence concerning the alleged offense," it "falls within the province of the ultimate finder of fact and must be deferred." *Id.*

In his motion to dismiss, Giglio challenges all four counts on the ground that "the statements alleged in the information are constitutionally protected speech and do not qualify as true threats." ECF-34 at 7.  Specifically, he argues that (i) the information fails to state an offense by not expressly alleging the subjective element of a true threat, and (ii) the messages charged in the Information objectively fail to qualify as true threats. *Id.* at 9-14.  He is wrong in both regards.

First, every count in the Information adequately states an offense as a matter of law by setting forth the essential facts of Giglio's offense conduct and the statutory elements of the crimes of which he has been charged.  There is no requirement, as Giglio claims, for the information to allege expressly the subjective element of a true threat where it otherwise adequately informs him of the charges he faces.  Rather, to the extent that the offenses require proof of a "true threat" to survive First Amendment scrutiny, the defendant has been adequately put on notice of that requirement by the language in the Information.

Second, Giglio's "true threat" arguments are "substantially founded upon and intertwined with evidence concerning the alleged offense," and should be reserved for the jury at trial.  *See Nukida*, 8 F.3d at 669.  At this stage, the Court may only dismiss on First Amendment grounds "if it were clear, as a matter of law, that the speech in question" as alleged in the Information is constitutionally "protected"—which is not the case here.  *See United States v. Hanna*, 293 F.3d 1080, 1087 (9th Cir. 2002).  Where it is unclear at best whether the statements alleged are "protected expression or true

threats, it is appropriate to submit the issue, in the first instance, to the jury." *Id.* (quoting *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002). Because a reasonable jury could find that the communications alleged in the Information constitute true threats or are otherwise unprotected speech, dismissal of the Information is not appropriate.

### 1. Each count in the Information sufficiently states an offense.

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment," and it must accept its allegations as true "in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). A facially sufficient charge "cannot be dismissed on the basis of factual questions, the resolution of which must await trial," nor on a claim that the government will be unable to prove its case. *Id.; United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment or information "be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." An information is sufficient if it "contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982); *see also United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (finding the lack of "a specific verbal elaboration of criminal intent" was "not fatal to the indictment" because "the word 'escape'. . . like the word 'embezzled'. . . connotes wrongful intent"). "[A]n indictment that tracks the words of the statute charging the offense is sufficient as long as it unambiguously sets forth all elements necessary to constitute the offense." *Davis*, 336 F.3d at 922; *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) ("The Supreme Court has held that it is acceptable for an indictment to set forth the offense in the language of the statute itself provided that the language clearly sets forth all the requisite elements of the offense without ambiguity." (citation omitted)). The charge must be "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *Buckley*, 689 F.2d at 899; *accord United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). "The test of sufficiency … is not whether [the

charge] could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000).

Here, each count in the Information adequately states an offense because it "tracks the words" of the relevant charging statute, *Davis*, 336 F.3d at 922, and sets forth the "elements of the charged crime in adequate detail to inform the defendant of the charge" against which he must defend. *Buckley*, 689 F.2d at 896. For example, Counts One and Four track the language of the statutory offense charged— 18 U.S.C. § 115(a)(1)(B)—which states:

> Whoever . . . threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

The elements of this offense are: (1) the defendant threatened to assault, kidnap, or murder a United States official; and (2) the defendant did so with intent to impede, intimidate, or interfere with the United States official while he was engaged in the performance of official duties, or did so with intent to retaliate against the United States official on account of the performance of his official duties. Ninth Circuit Model Criminal Jury Instruction 8.15 (2022 ed., last updated March 2026). These elements are clearly set forth in Counts One and Four, which also quote the underlying communication constituting the "threat[] to assault, kidnap, or murder" and specify the federal official who Giglio intended "to impede, intimidate, or interfere with" or "to retaliate against . . . on account of the performance of his official duties."

Likewise, Count Two sets forth the elements of the offense under 18 U.S.C. § 875 in a manner consistent with the language of the statute, while also expressly alleging that Giglio did so "knowingly and willfully"—thereby asserting a *mens rea* element that is not found in the statutory language but consistent with Ninth Circuit law. *Compare* ECF-8 *with* 18 U.S.C. § 875 ("Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five

years, or both."); *see also* Ninth Circuit Model Criminal Instruction 8.13 (setting forth the elements of the offense as (1) the defendant knowingly transmitted in interstate commerce a communication containing a threat to kidnap or injure a natural person, and (2) such communication was transmitted for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat."). Finally, Count Three also suffices in that it tracks the elements of 47 U.S.C. § 223(a)(1)(C), which prohibits "mak[ing] a telephone call or utiliz[ing] a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person."[2]

Because each count in the Information tracks the statutory language of the offenses charged and "sets forth all the requisite elements of the offense without ambiguity," they are sufficient as alleged. As explained below, to the extent that the counts implicate speech, the Information need not explicitly plead the definition or elements of a "true threat" to satisfy Rule 7 and the First Amendment at this stage. ECF-34 at 9.

   **2.**   ***The Information need not expressly allege a "subjective intent to threaten" where it already sufficiently alleges the requisite mental state for each offense.***

According to Giglio, the Information is insufficient because it does not expressly charge him with the "requisite mental state" for a "true threat," which is: "that he consciously disregarded a 'substantial risk that his communication[] would be viewed as threatening violence.'" *Id*. (quoting *Counterman v. Colorado*, 600 U.S. 66, 69 (2023)). Giglio is wrong on several fronts.

First, Giglio's argument incorrectly assumes that the sufficiency of each count in the Information rests solely on a "true threats" theory for First Amendment purposes. "True threats"—which "encompass those statements where the speaker means to communicate a serious expression of an intent

---

[2] The government recognizes that it mistakenly charged language tracking the older version of the statute. Section 223 was amended by the Violence Against Women Reauthorization Act of 2013 (VAWA 2013), PL 113-4, March 7, 2013, 127 Stat 54, to delete the word "annoy" from the prohibited acts defined in subsections (a)(1)(A) and (C), and to broaden the scope of the prohibited acts to cover telephone harassment of a "specific person" (not just a "person at the called number or who receives the communication"). The government intends to ask the Court to strike or "read out" the word "annoy" as surplusage, which is a permissible amendment because it only narrows the defendant's liability. *See United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985) ("Correction of clerical errors and "reading out" of surplusage is permitted . . . as long as the defendant is not prejudiced thereby.").

to commit an act of unlawful violence to a particular individual or group of individuals," *Virginia v. Black*, 538 U.S. 343, 359 (2003)—is one of several "historically unprotected categories of speech" that the government may prosecute under the First Amendment. *See Counterman v. Colorado*, 600 U.S. 66, 74 (2023).   Insofar as the Information charges Giglio with making threats or otherwise criminalizes a form of speech, the government must prove at trial that the speech charged rises to the level of a true threat or is otherwise unprotected under the First Amendment. *See Watts v. United States*, 394 U.S. 705, 707 (1969) (A statute that "makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind.  What is a threat must be distinguished from what is constitutionally protected speech.").  However, "true threats" are not the only category of unprotected speech underlying the counts charged.  Because the statutory violations charged in Counts One, Two, and Four (18 U.S.C. § 115 and 18 U.S.C. § 875(c)) directly criminalize the threats made by Giglio, the government agrees that the true threat doctrine does apply for First Amendment purposes.  But this is not the case for the violation of 47 U.S.C. § 223(a)(1)(C) charged in Count Three, which does not even require proof of a threat.  As discussed below, *see* section III.B, the statutory offense charged in Count Three is aimed not at speech, but at the defendant's conduct (in his harassing and anonymous use of the telephone), and any speech integral to that criminal conduct—both of which, like true threats, are not protected under the First Amendment.  Thus, Count Three does not necessarily rely on any "true threats" proof to survive the First Amendment at trial, let alone require any allegation of a "subjective intent to threaten" to survive dismissal at this stage.

In any event, even assuming that the government must prove a true threat for each of the four counts in the Information, it still need not plead all the facts or elements that make the charged communications a true threat to satisfy the First Amendment at this stage.  The question of whether the charged statements constitute a true threat (or otherwise fall outside the ambit of the First Amendment) is a contextual, fact-based one that typically cannot be resolved on the "four corners" of the Information or as a matter of law; instead, the question should be reserved for the jury to decide based on the evidence presented at trial.  *See United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987) ("[I]t is a jury question whether actions and communications are clearly outside the ambit of First Amendment

protection."); *United States v. Merrill*, 746 F.2d 458, 462 (9th Cir. 1984), *overruled on other grounds by Planned Parenthood*, 290 F.3d at 1073 ("Whether any given form of written or oral expression constitutes a true threat . . . is a question for the trier of fact under all of the circumstances.").  As further explained below, *see* section III.A.3, Giglio's Information does not present one of those rare cases in which the statements charged *clearly* constitute protected speech "as a matter of law" such that dismissal would be appropriate.  *See Merrill*, 746 F.2d at 462 ("A few cases may be so clear that they can be resolved as a matter of law . . . but most cases . . . present widely varying fact patterns that should be left to the trier of fact." (citations omitted)).

Because the Information sufficiently alleges the elements of the statutory offense and adequately informs Giglio of the charged offenses, it is constitutionally sufficient.  It is unnecessary for the counts to expressly set forth the "subjective intent to threaten," or plead additional language explaining why the charged statements are unprotected under the First Amendment, particularly when this can already be readily inferred from the existing language of the Information.  Indeed, Giglio is unable to cite any precedent requiring the dismissal of similar charges for failing to state the "subjective intent" element of a true threat.  To the contrary, recent Ninth Circuit decisions demonstrate that a dismissal of the Information on these grounds is improper.  *See United States v. Rogers*, No. 25-4001, 2026 WL 1429748 (9th Cir. 2026) (upholding district court's denial of motion to dismiss an indictment charging violations of 18 U.S.C. § 115 and 47 U.S.C. § 223); *United States v. Weiss*, No. 20-10283, 2021 WL 6116629 (9th Cir. 2021) (reversing the district court's dismissal of an indictment charging a violation of 47 U.S.C. § 223).

Finally, assuming that the Information must set forth sufficient facts to put Giglio on notice that he has been charged with unprotected "true threats" under the First Amendment (and thus must possess at least *Counterman*'s recklessness standard with regard to the nature of his threats), the language of the Information sufficiently achieves that purpose.  For one, the Information expressly alleges that Giglio "did threaten to assault, kidnap, and murder" a federal official (Counts One and Four), that he transmitted communications "contain[ing] a threat to kidnap and injure" (Count Two), and that he had a specific intent to "threaten" (Count Three).  These words—"threaten" and "threat"—are enough to

inform Giglio of the category of unprotected speech of which he has been charged (true threats) and implicitly convey the elements inherent to any true threat. Furthermore, each of the counts already explicitly allege a subjective intent element consistent with the mental state required for the statutory offense, each of which actually surpasses the recklessness bar established in *Counterman*. *See* ECF-8 (Counts One, Three, and Four requiring specific intent; Count Two requiring knowledge and willfulness).

Indeed, the requirement of a specific intent for these offenses—such as the intent to "intimidate" or the intent to "abuse, threaten, and harass"—can be "the determinative factor separating protected expression from [the] unprotected criminal behavior" charged. *See Gilbert*, 813 F.2d at 1529 ("[T]he statute's requirement of intent to intimidate serves to insulate the statute from unconstitutional application to protected speech."). With regard to § 115(a)(1)(B) in particular (the statute charged in Counts One and Four), the Ninth Circuit has stated that proof of its specific intent element "would seem to subsume the subjective 'true threat' definition" as "one cannot have the intent required under section 115(a)(1)(B) without also intending to make the threat." *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005); *see also id.* n. 9 ("It is well-settled that a speaker can subjectively intend the speech as a threat even if the speaker never actually intended to carry out the threat, such as where the speaker intends the threat to disrupt a protected official's performance of her official duties through intimidation or threatened retaliation."). Count Two is no different—the allegation that Giglio "knowingly and willfully" communicated "a threat to kidnap and injure" more than sufficiently conveys that Giglio had a subjective intent to threaten.

In sum, when "read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied," the Information is sufficient to apprise Giglio of the unprotected criminal speech and conduct against which he must defend. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985).

> **3.    *Because a reasonable jury could find the statements alleged in the Information constitute true threats, dismissal of the Information is not appropriate at this stage.***

Giglio also argues that the Information should be dismissed because the two statements

underlying the four counts in the Information do not satisfy the objective element of a true threat. His objective-prong arguments are either foreclosed by case law or, at the very least, constitute jury arguments that should be reserved for trial.

To constitute a true threat, a statement must satisfy both a subjective and objective test. As already discussed, the subjective element requires the defendant possess at least "a mental state of recklessness" with regard to the threatening nature of his statements—i.e., that he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 69.[3]

The objective element requires that the statements "would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm on or to take the life of" another, and examines "the entire factual context of [the] statements including: the surrounding events, the listeners' reaction, and whether the words are conditional" to make that determination. *United States v. Bagdasarian,* 652 F.3d at 1119. The objective test focuses whether "a reasonable person would foresee" that their statements, "in the entire context and under all the circumstances . . . would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Planned Parenthood*, 290 F.3d at 1076. "It is not necessary that the defendant intend to, or be able to carry out his threat[.]*" Id*. Nor is it the case that "threatening speech made in public is entitled to heightened constitutional protection just because it is communicated publicly rather than privately." *Id.*

Because the question of whether a particular statement meets the objective element of a true threat is a fact-intensive inquiry that turns on "the entire factual context," *Bagdasarian*, 652 F.3d at 1122, the Ninth Circuit has repeatedly held that "whether political speech is protected political hyperbole or an unprotected true threat can be an issue for a jury, particularly in cases of criminal

---

[3] Prior to *Counterman*, the Ninth Circuit's subjective element required that the speaker "made the statements *intending* that they be taken as a threat." *United States v. Bagdasarian*, 652 F.3d 1113, 1122 (9th Cir. 2011) (emphasis added). Since *Counterman*'s clarification that the minimum *mens rea* for a true threat is recklessness, rather than knowledge or intent, *see* 600 U.S. at 75, the Ninth Circuit also appears to have adjusted its subjective test accordingly. *See United States v. Ho-Romero*, 167 F.4th 1037, 1047 (9th Cir. 2026) (discussing Counterman and explaining that "a mens rea of recklessness is constitutionally sufficient to show that a defendant intended to make a threat.").

prosecution." *Fogel v. Collins*, 531 F.3d 824, 829 (9th Cir. 2008).  In the infrequent case where an indictment charges speech that is clearly protected under the First Amendment as a matter of law, the district court may "dismiss the indictment only if the language was so facially insufficient that no reasonable jury could find that the language amounted to a true threat." *United States v. Zavalidroga*, No. 97-10290, 156 F.3d 1241, 1998 WL 403361, at *1 (9th Cir. July 7, 1998).  However, this is simply not the case here, where the Information states sufficient facts such that a reasonable jury could find the statements alleged meet both the objective and subjective elements of a true threat.  So long as there are "material facts in dispute" or it is "not clear that [the communications] were protected expression or true threats, it [is] appropriate to submit the issue, in the first instance, to the jury." *Hanna,* 293 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Planned Parenthood,* 290 F.3d at 1070); *see also United States v. Weiss*, No. 20-10283 (holding the district court erred in dismissing the indictment because it was "'not clear' enough whether Weiss's . . . message was a true threat to be resolvable 'as a matter of law.'").

A closer examination of Giglio's objective-prong arguments shows why his fact-based challenges are either foreclosed by the law or better reserved for the jury and, in any event, do not justify a dismissal of the Information at this stage.

With regard to the statement underlying Counts One, Two, and Three, Giglio first argues that the statements in the voicemail use conditional wording and are premised on the occurrence of a hypothetical war that may or may not ensue at some unspecified point in the future.  ECF-34 at 12–13.  The conditional language of the threat, however, does not foreclose a true threat finding as a matter of law.  "Most threats are conditional," and the conditional framing of a statement "does not make the statement any less of a true threat." *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007).  Giglio's reliance on *Watts* and *Claiborne Hardware* is also misplaced given their distinguishable contexts: *Watts* involved a statement at a public rally that the crowd greeted with laughter and that was "expressly made conditional upon an event" the speaker "vowed would never occur," *Watts*, 394 U.S. at 707, and *Claiborne* involved impassioned advocacy in the course of a lawful boycott.  Neither involved an anonymous, privately-directed call to a federal official's office invoking the use of a specific rifle owned by the defendant. *See Planned Parenthood*, 290 F.3d at 1085 (distinguishing *Brandenberg*,

*Watts*, and *Claiborne* because "[t]here were no individualized threats" in those cases).

Second, Giglio also complains that the messages are "notably" and "incredibly vague" by comparing them to a district court case wherein the defendant "spoke in detail about his plans to kill U.S. Senators." ECF-34 at 13, 15. As a matter of law, there is no requirement that a defendant provide a "particular, credible date" or explicit details about his plan to commit violence. *See* ECF-34 at 13. For his statement to qualify objectively as a true threat, again, the objective test requires a review of the "entire factual context" surrounding the alleged threat. And to be clear, in his March 2025 voicemail, Giglio threatened to "set up behind my .308"—a specific weapon that he possessed around that time— "and do my job." A reasonable juror could find that such a statement, based on contextual evidence, constituted a "serious expression" of Giglio's intent to "commit an act of unlawful violence." *Black*, 538 U.S. at 359; *see also Planned Parenthood*, 290 F.3d at 1073 (explaining that "a threat is 'an expression of an intention to inflict evil, injury, or damage on another'").

Third, Giglio's claim that his message did not "specifically state that [he] himself intended to kill or injure Mr. Swalwell," ECF-34 at 14, is neither factually accurate nor dispositive of the true threat question at this stage. In his March 2025 message, Giglio did not merely predict an abstract "war" in his message, but placed himself in it: "I'll just set up behind my .308 and I'll do my job." Even if he had not made a personal reference, a defendant "cannot escape potential liability simply by using the passive voice or couching a threat in terms of 'someone' committing an act of violence," so long as a reasonable recipient could read it as a veiled threat by the speaker or those acting with him. *United States v. Dillard*, 795 F.3d 1191, 1201 (10th Cir. 2015). Nor must a threat be "explicit" or "conveyed with the grammatical precision of an Oxford don." *United States v. Turner*, 720 F.3d 411, 425 (2d Cir. 2013); *see also Planned Parenthood* ("The fact that a threat is subtle does not make it less of a threat."). Additionally, the law "does not require that the maker of the threat personally cause physical harm to the listener," *id*. at 1077, because "the threat itself is the crime." *United States v. Romo*, 413 F.3d 1044, 1052 (9th Cir. 2005). For the same reason, the fact that Giglio made the call "from the opposite side of the country," is largely irrelevant to the objective test, because facts unknown to the recipient of a threat—such as the speaker's location—have little to no "bearing on whether [the] statements might be

interpreted as a threat' by a reasonable person" receiving them. *Bagdasarian*, 652 F.3d at 1122.

Finally, Giglio's "context" argument cuts entirely against him. Again, the standard for dismissal at this stage is not whether "a reasonable person would be even less likely to consider the message a true threat after considering its context," ECF-34 at 14, but whether *no* reasonable juror could find a true threat based on the facts as alleged in the Information. Here, the surrounding context supports, rather than undermines, the finding of a true threat. Giglio did not post to a public forum but called Congressman Swalwell's office directly—at least twice in a two-month period—where he knew his messages would be received (and were in fact received) by the Congressman and his staff. "A privately communicated threat is generally more likely to be taken seriously than a diffuse public one," and the anonymous, yet "personally targeted," nature of his messages only heightened the fear and concern they caused. *Planned Parenthood*, 290 F.3d at 1086; *Bagdasarian*, 652 F.3d at 1121 n.9 ("In some circumstances, anonymity may generate greater concern because listeners cannot rely on the speaker's identity to discount any serious intentions.").

Furthermore, that Giglio's threatening statements may have been made in the context of a political grievance does not immunize them. *See McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1222 (9th Cir. 1990) ("That appellees were engaging in protected expressive activities at the same time and to the same end as the alleged threats of violence does not immunize [them] … [n]or does the fact that [they] were politically motivated."). When a message "goes well beyond the political message" that may have motivated it and ventures into true threat territory, it loses First Amendment protection. *Planned Parenthood*, 290 F.3d at 1080. At a minimum, because reasonable jurors could disagree about how Giglio's messages should be interpreted, dismissal of the Information is unwarranted.

**B.    Section 223(a)(1)(C) is Constitutional As Applied to Giglio's Anonymous Harassing Calls**

The First Amendment right to free speech "is not absolute." *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). Laws that restrict speech can be valid if they (1) target conduct and only incidentally burden speech, *id.* (citing *Virginia v. Hicks*, 539 U.S. 113, 123–24 (2003)), or (2) restrict unprotected speech in a narrow, traditionally

recognized category of speech such as obscenity, defamation, fraud, incitement, fighting words, child pornography, true threats, and speech integral to criminal conduct, *id.* (citing *United States v. Stevens*, 559 U.S. 460, 468 (2010)); *United States v. Alvarez*, 567 U.S. 709, 717 (2012).  "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others."  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Giglio's as-applied challenge to Count Three rests on a premise that he cannot establish as a matter of law—that his calls were protected speech—and it fails on the merits regardless. Section 223(a)(1)(C) criminalizes "mak[ing] a telephone call or utiliz[ing] a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person."  47 U.S.C. § 223(a)(1)(C).  On its face, § 223(a)(1)(C) regulates the conduct of anonymous use of a telephone with the intent to harass, not the content of any message.  To the extent the statute reaches any speech, it regulates no more than speech integral to criminal conduct—which has never been protected under the First Amendment.  And even assuming the statute operates as a "content-based regulation on speech" as applied to Giglio, his "particular speech activity" in Count Three did, as alleged, consist of a true threat to a federal official—which, as already established, falls outside the ambit of First Amendment protection.  As such, § 223(a)(1)(C) survives the First Amendment as applied to Giglio's conduct.

### 1.    Section 223(a)(1)(C) regulates Giglio's conduct.

Section 223(a)(1)(C) does not regulate speech for its content, even as applied to Giglio.  Rather, it criminalizes Giglio's anonymous use of a telecommunications device undertaken with the intent to "abuse, threaten, or harass" a specific person.  47 U.S.C. § 223(a)(1)(C).  Indeed, the statute explicitly states the violation may occur "whether or not conversation or communication ensues."  47 U.S.C. § 223(a)(1)(C).  What it proscribes is a manner of conduct—the anonymous use of a telephone for an abusive, threatening, or harassing purpose—not the expression of any idea, viewpoint, or subject matter. The content of any communication made during the call matters only as evidence of the harassing intent required for a violation of the statute.

The Ninth Circuit has not yet directly addressed the constitutionality of § 223(a)(1)(C) in a published decision.[4]  The closest controlling authority here, however, is *United States v. Waggy*, 936 F.3d 1014 (9th Cir. 2019), where the Court rejected an as-applied challenge to a materially similar telephonic harassment statute under Washington law.  There, the Court considered Washington Revised Code (RCW) § 9.61.230(1), which prohibits, in relevant part, "ma[king] a telephone call to [any other] person" "with intent to harass, intimidate, torment or embarrass" that other person" by: (a) "using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act"; (b) doing so "anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues"; or (c) "threatening to inflict injury on the person or property of the person called or any member of his or her family or household[.]"  RCW § 9.61.230(1)(a), (b), (c). Waggy was convicted of violating all three subsections in five different counts, based on a series of calls he made to the Department of Veteran Affairs (VA) Director's office, which were answered by a secretary. [5]  During the calls, Waggy made demands for property and money that he believed the VA owed him, "threatened to come to the [VA] Center to seize the property and to 'use force to defend himself,'" "screamed" at the secretary receiving his calls, called her a "fucking cunt," "used 'a lot of F bombs,'" and sounded "so irrational on the phone" while screaming that it "scared.  *Waggy*, 936 F.3d at 1016–17.

---

[4] The Ninth Circuit has nonetheless issued a number of unpublished decisions confirming the constitutionality of § 223(a)(1) under the First Amendment as a primarily a conduct-based statute.  In *Rogers*, for example, the Ninth Circuit recently affirmed a district court's rejection of First Amendment challenges to two § 223(a)(1)(E) charges, reasoning that the counts "charged Rogers . . . for his conduct, not his speech; that is, he was charged for placing the calls to the NTOC and the Speaker's office with the intent to harass" and that the statute's "intent requirement also ensures that Rogers was convicted for his conduct, not for speech protected by the First Amendment.  2026 WL 1429748 at *1.  Likewise, in *Sandhu*, the Court upheld the constitutionality of a § 223(a)(1)(D) conviction because "the statute regulates conduct, not speech" and "[a]ny expressive aspects of Sandhu's conduct were 'integral to criminal conduct' and thus not protected under the First Amendment."  *United States v. Sandhu*, 740 F. App'x 595, 596 (9th Cir. 2018).  And in *Weiss*, the Court reversed a decision from this district, which had dismissed a § 223(a)(1)(C) indictment on as-applied First Amendment grounds.  2021 WL 6116629 at *1.  Furthermore, several other circuits have also upheld the constitutionality of the statute.  *See, e.g.*, *United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006); *United States v. Bowker,* 372 F.3d 365 (6th Cir. 2004).

[5] Despite the convictions, Waggy challenged only the constitutionality of subsection (a) in his motion for judgment of acquittal and on appeal.  The Ninth Circuit nonetheless considered the entire statute and found it constitutional based on the specific intent element, which applies to all three subsections.

In determining whether the statute "reaches protected speech as applied here," the Court first discussed the statute's interpretation by Washington courts as "'clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another while using' obscene or threatening words." *Id.* at 1017.  As such, the statute "primarily regulates conduct, with minimal impact on speech" and the "gravamen of the offense is the thrusting of an offensive and unwanted communication upon one who is unable to ignore it." *Id.* at 1020 (citation omitted).  As applied to Waggy's conduct, "the statute was properly cabined" because it "regulates nonexpressive conduct and does not implicate First Amendment concerns." *Id*. at 1019.  According to the Court, Waggy's "convictions [were] not for obscene speech, but rather for placing calls with the specific intent to harass," and the fact that Waggy "included some criticism of the government does not necessarily imbue his conduct with First Amendment protection." *Id*.  The determinative factor cited by the Court in deeming the statute constitutional as-applied to Waggy conduct was its specific-intent element, which "requires proof that the defendant intended to harm the victim when initiating the call," and thereby "ensures that [he] was convicted for his conduct, not for speech protected by the First Amendment." Indeed, as *Waggy* discussed at length in support of its conclusion, "[t]he requirement of a specific intent to harass—the mens rea element contained in the Washington statute—has led other circuits"—as well as "many state courts"—"to uphold telephone harassment statutes against First Amendment challenges." *Id*. at 1020 (citing cases).

*Waggy* is instructive, if not dispositive, with regard to Giglio's as-applied challenge.  Giglio, like Waggy, used a communications device with a criminal intent, that is, to "abuse, threaten, or harass" the intended recipient of his call.  As the statute explicitly states, it does not matter "whether or not conversation or communication ensue[d]" when he made his calls, so long as the government can prove he possessed the requisite criminal intent and that he did so in a specified manner (anonymously).  Like the Washington statute, the gravamen of § 223(a)(1)(C) does not turn on the nature or content of any speech by Giglio; rather, it turns on two other aspects that render the conduct criminal: (i) the specific intent to "abuse, threaten, or harass," a mental state that is inherently wrongful, and (ii) the anonymous nature of the call, which has a tendency to evoke greater fear and distress in the recipient of a call

(particularly when coupled with the caller's abusive, threatening, or harassing purpose). Thus, the statute is aimed at conduct, not speech, and therefore unprotected by the First Amendment.

### 2.      As applied to Giglio's harassing voicemail, § 223(a)(1)(C) reaches only speech integral to criminal conduct.

To the extent that § 223(a)(1)(C) "reaches *any* speech, it stretches no further than speech integral to unlawful conduct." *United States v. Hansen*, 599 U.S. 762, 783 (2023). "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co., 33*6 U.S. 490, 502 (1949). "Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected." *Hansen*, 762 U.S. at 783 (citing *Williams*, 553 U.S., at 298). The Supreme Court has "applied this principle many times." *Id.* (citing as examples: the promotion of a particular piece of contraband, *William*, 553 U.S. at 299; solicitation of unlawful employment, *Pittsburgh Press Co.* v. *Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973); and picketing with the "sole, unlawful [and] immediate objective" of "induc[ing]" a target to violate the law, *Giboney*, 336 U.S. at 502).

Speech is integral to criminal conduct if it "constitute[s] the means of carrying out" the criminal offense. *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (quoting *United States v. Meredith*, 685 F.3d 814, 819, 823 (9th Cir. 2012)). "[I]n those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." *Meredith*, 685 F.3d at 820; *see also United States v. Sineng-Smith*, 910 F.3d 461 (9th Cir. 2018) ("'[S]peech or writing used as an integral part of conduct in violation of a valid criminal statute' does not enjoy First Amendment protection."). Here, any speech made by Giglio was a means of carrying out his intent to harass Congressman Swalwell and his staff in making the call, and thus was integral to his criminal conduct.

In *Osinger*, the Ninth Circuit reached a similar conclusion in rejecting a First Amendment challenge to the cyberstalking statute, 18 U.S.C. § 2261A. There, the defendant had harassed his ex-girlfriend through text messages, creation of a fake Facebook page, and sending emails with nude photos

of her to her co-workers. *Id.* at 941–42. The Court held that "[a]ny expressive aspects of Osinger's speech were not protected under the First Amendment because they were 'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress to V.B." *Id.* at 947. Here too, any expressive aspects of Giglio's calls were integral to his criminally harassing conduct, which was accomplished by his use of a communications device with the specific intent to harass, threaten, or abuse a person while masking his identity.

Finally, as the Supreme Court recently clarified regarding its "speech-incident-to-conduct precedents," the "focus lies on two entirely different questions: whether the law in question restricts speech only because it is integrally related to unlawful conduct—or whether the law restricts expressive conduct only for reasons unrelated to its content." *Chiles v. Salazar*, 146 S. Ct. 1010, 1026 (2026). To the extent § 223(a)(1)(C) does not satisfy the first inquiry, it certainly satisfies the second: the statute restricts the "expressive conduct" of making an anonymous, harassing telephone call "without regard to the message [such conduct] may convey." *Id.* In sum, the content of Giglio's voicemail is not the object of prohibition in Count Three, even if it may be relevant at trial to prove his intent to harass Congressman Swalwell (along with the government's other contextual and circumstantial evidence of his specific intent).

### 3. Assuming the statute reaches speech as applied to Giglio, § 223(a)(1)(C) is not a content-based restriction.

Giglio's content-based arguments otherwise do not hold water. A statute is content-based only when it "draw[s] distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Section 223(a)(1)(C) draws no such distinction—it turns on anonymity and culpable intent, not subject matter or viewpoint, and applies to harassing calls about any topic.[6] This is not a case where, as Giglio claims, "the intent of the defendant is proven only with reference to the content of his staetments." That a factfinder must consider what was said to determine whether the

---

[6] *United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) does not compel a different conclusion. The Ninth Circuit in *Waggy* distinguished and declined to follow *Popa*, then further noted that, "[t]o the extent that *Popa* is not distinguishable its analysis is against the great weight of authority—including our own." *Waggy*, 936 F.3d at 1020 n. 5.

requisite harassing intent exists does not render the statute content-based. *See Project Veritas v. Schmidt*, 125 F.4th 929 (9th Cir. 2025) (en banc) ("A regulation may remain content neutral despite touching on content . . . so long as it does not discriminate on the basis of viewpoint or restrict discussion of an entire topic." (citations omitted)). Under Giglio's contrary argument, every threat, extortion, solicitation, and fraud statute that requires examination of the defendant's words to determine whether the crime has occurred would constitute a content-based regulation, which is simply not true.

Additionally, Giglio's reliance on *Chiles v. Salazar*, 146 S. Ct. 1010 (2026) is misplaced and does not disturb the constitutionality of § 223(a) as applied to Giglio. *Chiles*, which concerned Colorado's conversion therapy ban, is distinguishable on several fronts. Most critically, the Colorado law, as applied to Ms. Chiles, clearly operated as a content-based, viewpoint-discriminatory regulation on speech because it proscribed "what views she may or may not express" in her talk therapy with clients. *Chiles*, 146 S. Ct. at 1024. Section 223(a)(1)(C) does not operate in the same way as applied to Giglio because it does not prohibit Giglio from expressing certain views or expressing any views at all. Similarly, *Cohen v. California* is equally inapposite. There, the only basis for Cohen's disturbance of the peace was the message on the jacket that he wore, and not because of how he wore the jacket or any other criminal conduct. Here, Giglio is liable for violating § 223(a)(1)(C) not only because of what he said in his March 2025 voicemail, but because he made the call anonymously and with the specific intent to harass.

Furthermore, Giglio's "I love ponies" hypothetical does not help him. *See* ECF-34 at 19. In that scenario, Giglio asks the Court to imagine that he "engaged in the exact same conduct alleged," "did so with the requisite intent to harass," and "complied with the statute's identification requirement," but "the rest of the voicemail's content was different" and "rather than rambling about a war, Mr. Giglio simply said 'I love ponies.'" *Id.* According to Giglio, "[a] criminal prosecution would be inconceivable," which he claims "demonstrates that § 223(a)(1)(C) is a content-based restriction as applied." *Id.* Not necessarily so. In claiming that his hypothetical demonstrates that only the content of Giglio's message matters, Giglio's argument conveniently leaves out any other contextual facts and evidence that the government might present to demonstrate Giglio's criminal intent under § 223(a)(1)(C), as well its

criminal impact. What if, using Giglio's hypothetical, he made the "I love ponies" call after calling and hanging up fifty times, or made the same "I love ponies" call fifty times in a row? What if, during the call, Giglio screeched, "I love ponies," in a blood-curdling voice, evoking immediate fear and concern in the recipient? What if there was a history of an abusive relationship between Giglio and the intended recipient of his call wherein he knew the phrase, "I love ponies," had a particularly emotionally distressing effect on his victim and intended to use it in that manner? These additional contextual facts may seem as absurd as the hypothetical itself, but they demonstrate an important point: Giglio's criminal liability under § 223(a)(1)(C) does not depend solely (or even primarily) on any particular viewpoint or content expressed during his call, but on the manner in which he made that call, its surrounding context, and other facts relevant to showing that he had the requisite criminally harassing intent.

Moreover, Giglio's "speech-creating argument" misconstrues the reach of *Garcia v. County of Alameda*, 150 F.4th 1224 (9th Cir. 2025) and *Project Veritas v. Schmidt*, 125 F.4th 929 (9th Cir. 2025) (en banc). Both *Garcia* and *Project Veritas* concerned the First Amendment's protection over "speech creation" processes such as spectating events for the purpose of "newsgathering and reporting activities" (*Garcia*) and "recording of conversations in connection with . . . newsgathering activities" (*Project Veritas*). In contrast, the act of making an anonymous telephone call for a harassing purpose has never been recognized as a "speech creation" activity, and such activity certainly did not operate that way in Giglio's case. Furthermore, the First Amendment protects the antecedent steps necessary to produce protected speech based on the principle that governments otherwise "could effectively control or suppress speech by the simple expedient of restricting an early step in the speech process rather than the end result." This principle, however, only makes sense when the end-product speech is protected. If the First Amendment does not protect the speech being produced—such as defamation or obscenity, or a true threat—it also does not protect the activity leading to the creation of that unprotected speech. Here, § 223(a)(1)(C) does not restrict the act of telephoning as a precursor to lawful expression; it publishes the completed act of anonymous telephonic harassment. Put another way, there is no protected speech whose creation is burdened by the statute.

Because § 223(a)(1)(C) is a content-neutral restriction that regulates conduct and only

incidentally burdens speech, it is subject to intermediate scrutiny—a standard that it easily satisfies.  A government regulation passes intermediate scrutiny "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  Here, the statute furthers the compelling interest of protecting people from abusive, threatening, and harassing conduct, and the elements of the offense ensure that the statute's incidental restriction on speech is no greater than necessary to serve the compelling interest.  In particular, the specific intent requirement renders the statute narrowly tailored to serve this interest by focusing on the intent of the speaker rather than how the speech affects the listener, such that the application of the statute did not turn on the content of the speech.

> **4.  In any event, a reasonable juror could find that the speech constitutes a true threat and is therefore unprotected.**

Alternatively, if the jury finds that Giglio's calls were true threats—as it readily could, *see supra* section III.A.3—Count Three would be unprotected under the First Amendment for that reason alone.  Thus, if the Court finds that § 223(a)(1)(C) reaches speech, the true threat doctrine serves as an independent basis to deny Giglio's as-applied claim because § 223(a)(1)(C) would still be constitutional as applied.

Lastly, because § 233(a)(1)(C) as applied to Giglio regulates only conduct, speech integral to conduct, and a true threat, rather than any protected speech, there is no need for the Court to engage in the strict scrutiny arguments raised by Giglio in his motion.  *See* ECF-34 at 21–24.

//

//

//

//

//

//

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Giglio's motion in its entirety.

DATED:  June 11, 2026                                    Respectfully submitted,

                                                        CRAIG H. MISSAKIAN
                                                        United States Attorney


                                                        _____/s/_____
                                                        ANNE C. HSIEH
                                                        AMANI S. FLOYD
                                                        Assistant United States Attorneys