JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
DANIEL BLANK, Bar No. 192457
TAYLOR FATHERREE, Bar No. 358709
LISSET M. PINO, Bar No. 346133
Assistant Federal Public Defenders
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Lisset_pino@fd.org

Counsel for Geoffrey Giglio

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEOFFREY GIGLIO,<br><br>Defendant. | **Case No.:** CR 25–264 VC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS UNDER THE FIRST AMENDMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.   INTRODUCTION ......................................................................................................... 1

II.  ARGUMENT ............................................................................................................... 2

      A.   The Government Cannot Meet Its Burden To Show Either of Mr. Giglio's
           Messages Contain a True Threat........................................................................ 2

           i.   The information does not adequately allege a subjective intent to
               threaten as to all counts............................................................................ 2

           ii.  The messages charged in the information objectively fail to state
               a true threat. ............................................................................................ 5

      B.   47 U.S.C. § 223(a)(1)(c) is Unconstitutional As-Applied. ................................. 7

           i.   The exception for speech integral to criminal conduct
               is inapplicable. ........................................................................................ 8

           ii.  As applied to Mr. Giglio, Section 223(a)(1)(C) regulates speech,
               not conduct............................................................................................. 10

           iii. Because § 223(a)(1)(C) regulates the contents of Mr. Giglio's
               speech, strict scrutiny applies. ............................................................... 12

           iv.  Section 223(a)(1)(C) cannot survive even intermediate scrutiny. ....... 15

III. CONCLUSION.............................................................................................................. 16

**TABLE OF AUTHORITIES**

**Federal Cases**

*Chiles v. Salazar*,
 146 S. Ct. 1010 (2026) ................................................................... *passim*

*Counterman v. Colorado*,
 600 U.S. 66 (2023) ......................................................................... *passim*

*Elonis v. United States*,
 575 U.S. 723 (2015) ................................................................................. 4

*Garcia v. Cnty. of Alameda*,
 150 F.4th 1224 (9th Cir. 2025) ............................................................. 12

*Giboney v. Empire Storage & Ice Co.*,
 336 U.S. 490 (1949) ................................................................................ 8

*Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC,
 2025 WL 3030582 (C.D. Cal. June 13, 2025) ...................................... 6

*Miller v. Gammie*,
 335 F.3d 889 (9th Cir. 2003) (en banc) ........................................... 10-11

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
 585 U.S. 755 (2018) .............................................................................. 10

*Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*,
 496 U.S. 91 (1990) .................................................................................. 6

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
 413 U.S. 376 (1973) ................................................................................ 8

*Project Veritas v. Schmidt*,
 125 F.4th 929 (9th Cir.) ................................................... 11, 12, 13, 15

*Rodriguez Diaz v. Garland*,
 53 F.4th 1189 (9th Cir. 2022) .............................................................. 13

*Turner Broad. Sys., Inc. v. F.C.C.*,
 512 U.S. 622 (1994) .............................................................................. 12

*United States v. Bagdasarian*,
 652 F.3d 1113 (9th Cir. 2011) ............................................................ 6, 7

*United States v. Boren*,
 278 F.3d 911 (9th Cir. 2002) .................................................................. 5

*United States v. Bowker*,
 372 F.3d 365 (6th Cir. 2004) ............................................................... 11

*United States v. Davis*,
 336 F.3d 920 (9th Cir. 2003) .................................................................. 2

*United States v. Du Bo*,
  186 F.3d 1177 (9th Cir. 1999) .................................................................................. 2, 3

*United States v. Eckhardt*,
  466 F.3d 938 (11th Cir. 2006) ...................................................................................... 11

*United States v. Hayashi*,
  22 F.3d 859 (9th Cir. 1993) .......................................................................................... 10

*United States v. Hunt*,
  82 F.4th 129 (2d Cir. 2023) ............................................................................................ 6

*United States v. Jackson*,
  72 F.3d 1370 (9th Cir. 1995) ........................................................................................... 2

*United States v. Martinez*,
  800 F.3d 1293 (11th Cir. 2015) (per curiam) ............................................................ 2, 4

*United States v. Nformangum,* No. 24-20515,
  2026 WL 18900 (5th Cir. Jan. 2, 2026) (per curiam) ................................................ 3, 4

*United States v. Osinger,*
  753 F.3d 939 (9th Cir. 2014) ....................................................................................... 8, 9

*United States v. Popa*,
  187 F.3d 672 (D.C. Cir. 1999) ........................................................................ 9, 10, 14, 15

*United States v. Rogers*, No. 25-1267,
  2026 WL 1429748 (9th Cir. May 21, 2026) ............................................................... 3, 11

*United States v. Sandhu*,
  740 F. App'x 595 (9th Cir. 2018) .................................................................................. 11

*United States v. Sheikh*,
  164 F.4th 629 (7th Cir. 2026) .......................................................................................... 6

*United States v. Stewart*,
  420 F.3d 1007 (9th Cir. 2005) ......................................................................................... 4

*United States v. Toltzis,*
  2016 WL 3479084 (N.D. Cal. 2016) ............................................................................... 7

*United States v. Waggy*,
  936 F.3d 1014 (9th Cir. 2019) ........................................................................................ 10

*United States v. Weiss,* No. 20-10283,
  2021 WL 6116629 (9th Cir. Dec. 27, 2021) ..................................................................... 3

*United States v. Williams*,
  553 U.S. 285 (2008) ......................................................................................................... 8

*Ward v. Rock Against Racism*,
  491 U.S. 791 (1989) ............................................................................................... 14, 15

**Federal Statutes**

18 U.S.C. § 115 ................................................................................................. 3, 4

18 U.S.C. § 875 ................................................................................................... 2-3

47 U.S.C. § 223 ............................................................................................... *passim*

**Other Authorities**

Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*,
    101 Cornell L. Rev. 981 (2016) ............................................................................. 8

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

## I.  INTRODUCTION

As explained in the opening brief, the information fails to state an offense for any of the four charged counts because it does not charge that Mr. Giglio consciously disregarded the "substantial risk that his communication[] would be viewed as threatening violence." *Counterman v. Colorado,* 600 U.S. 66, 69 (2023). The government responds that the information is sufficient because each count tracks the words of the relevant charging statute. But necessary elements not present in the statutory language must be included in an indictment. Here, that means the mens rea required by *Counterman* must be charged in the information. Because it is not, the information must be dismissed.

The information also fails to state an offense because Mr. Giglio's alleged statements objectively do not constitute true threats. Unable to justify the information on its terms, the government introduces extensive additional facts drawn from the complaint. But a motion to dismiss must be resolved on the four corners of the information. And here, the allegations within the information fail to establish a true threat as a matter of law.

In addition, Count Three must also be dismissed because § 223(a)(1)(C) violates the First Amendment as applied to Mr. Giglio. Contrary to the government's argument, the "speech integral to criminal conduct" exception does not save the statute. That exception applies only where the proscribed speech is the means by which a *separate* unlawful act is committed. Otherwise, Congress could simply pass a law criminalizing protected speech, then justify that law on the grounds that it applies only to speech integral to criminal conduct.

The government also argues that the statute can (and often does) apply to mere conduct, not speech—but that is beside the point. In an as-applied challenge, what matters is how the statute is being applied to the specific facts of the case. Here, criminal charges turn on (1) Mr. Giglio's failure to identify himself and (2) the words he used on the call, both of which are based on the call's content. And § 223(a)(1)(C) is far too broad to survive either strict or intermediate scrutiny, rendering the statute unconstitutional as applied.

For these reasons, the Court must dismiss all charges against Mr. Giglio.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

## II. ARGUMENT

### A. The Government Cannot Meet Its Burden To Show Either of Mr. Giglio's Messages Contain a True Threat

#### i. The information does not adequately allege a subjective intent to threaten as to all counts.

As explained in the opening brief, the information fails to state an offense for any of the four charged counts because it does not charge that Mr. Giglio possessed the requisite mental state. Dkt. 34 at 4-6. The information does not charge that Mr. Giglio consciously disregarded the "substantial risk that his communication[] would be viewed as threatening violence." *Counterman v. Colorado,* 600 U.S. 66, 69 (2023).

The government responds that the information is sufficient because each count tracks the words of the relevant charging statute, *see* Dkt. 38 at 8, but that misses the point. As the government itself concedes, "an indictment that tracks the words of the statute charging the offense is sufficient ***as long as it unambiguously sets forth all elements necessary to constitute the offense***." Dkt. 38 at 7 (quoting *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (emphasis added). "[I]mplied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995); *United States v. Du Bo,* 186 F.3d 1177, 1179 (9th Cir. 1999) (same). Applied here, that rule means that the information must charge the mens rea required by *Counterman*, since that is an element of the offense. *See Counterman*, 600 U.S. at 69 (absent subjective showing, conviction violated the First Amendment).

Contrary to the government's claim, the defense has cited caselaw directly supporting that proposition. *Cf.* Dkt 38 at 11. For example, in *United States v. Martinez*, the Eleventh Circuit dismissed an indictment charging that the defendant had made a threat in violation of 18 U.S.C. § 875(c). 800 F.3d 1293, 1295 (11th Cir. 2015) (per curiam). The Supreme Court's recent holding in *Elonis* had made clear that, in addition to the statutory elements of § 875(c), the government was also required to prove that the defendant subjectively intended to convey a threat to injure others. *Id*. The Eleventh Circuit held that because the indictment merely repeated the language of § 875(c) without alleging any subjective mens rea, it was deficient and

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

should have been dismissed. *Id*. Other courts to consider the issue have reached similar conclusions. *See, e.g.*, *United States v. Nformangum*, No. 24-20515, 2026 WL 18900, at *5 (5th Cir. Jan. 2, 2026) (per curiam) (§ 875(c) indictment was defective for failing to sufficiently charge subjective mens rea).

By contrast, the two cases cited in the government's brief are inapposite. *Contra* Dkt. 38 at 11. Neither *Rogers* nor *Weiss* addressed the question of whether the indictment sufficiently charged the subjective mens rea required by *Counterman*. *See United States v. Rogers*, No. 25-1267, 2026 WL 1429748, at *1 (9th Cir. May 21, 2026) (holding that the "plain language of the phone call" forming the basis of the indictment was sufficient to leave the question of whether a true threat had been made to the jury); *United States v. Weiss*, No. 20-10283, 2021 WL 6116629, at *1 (9th Cir. Dec. 27, 2021) (rejecting argument that the *objective* prong of a true threat was not properly charged in the indictment).

The government errs in claiming that the information here is nonetheless valid because it provides Mr. Giglio with sufficient notice that he is charged with possessing the intent required to prove a true threat. Dkt. 38 at 11-12. It is well established that "an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Du Bo*, 186 F.3d at 1179. The government cites no caselaw in support of the novel concept that an element required to prove the charge against the defendant can be omitted. Dkt. 38 at 11-12.

In the alternative, the government argues that the indictment does allege the required mens rea for each count. That is far from the case.

**Counts One and Four.** Section 115(a)(1)(B) requires proof that the defendant made a statement that qualifies as a threat to assault, kidnap, or murder, to a qualifying federal official. The offense can be proven through either of two mental states. First, the defendant must have made the statement with the "intent to impede, intimidate, or interfere with such official, . . . while engaged in the performance of official duties." 18 U.S.C. § 115(a)(1)(B). Alternately, the defendant must have made the statement "with intent to retaliate against such official, . . . on account of the performance of official duties." *Id*.

Neither one of these intent requirements fulfills *Counterman*'s requirement "that the defendant had some understanding of his statements' threatening character." *Counterman*, 600 U.S. at 73. Under the plain text of § 115(a)(1)(B), a defendant must send a statement that can objectively be interpreted as threatening assault, kidnap, or murder. And he must intend for that message to interfere with the official's duties, or to constitute retaliation in some form. But a defendant could intend to interfere with or retaliate against an official without appreciating "that others could regard his statements as" threatening violence. *Counterman*, 600 U.S. at 79 (quoting *Elonis*, 575 U.S. at 746) (Alito, J., concurring in part and dissenting in part). For instance, a defendant could intend to retaliate against an official by sending a message he believes will be embarrassing, not realizing that a reasonable person would interpret the message as a threat. Thus, an indictment that merely tracks the statutory language of § 115(a)(1)(B) does not sufficiently charge the constitutionally-required mens rea. *United States v. Stewart* did not hold otherwise. 420 F.3d 1007 (9th Cir. 2005). That case, which predates both *Counterman* and *Elonis*, did not consider this argument. *Stewart*, 420 F.3d at 1019; *contra* Dkt. 38 at 12.

**Count Two.** This count charges that the relevant message was "knowingly and willfully transmit[ted]." Dkt. 8 at 2. By its terms, that language requires only that the communication contain a threat, and that the communication be transmitted knowingly and willfully. It does not require proof that the speaker was aware of—and consciously disregarded—a "risk that his communication[ ] would be viewed as threatening violence." *Counterman,* 600 U.S. at 69. Merely tracking the statutory language is insufficient, as other courts have held. *Martinez*, 800 F.3d at 1295; *Nformangum*, 2026 WL 18900, at *5.

**Count Three.** The government claims that Count Three does not need to charge subjective intent because this Court is not charged under a true threat theory, but rather under the "speech integral to criminal conduct" exception. Dkt. 38 at 10; *but see infra* at § II.B.i (explaining that the "speech integral to criminal conduct" exception does not apply). However, the government later argues that the message charged in Count Three falls outside the protection of the First Amendment because it constitutes a true threat. Dkt. 38 at 24. To the

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

4

extent the government intends to rely on a true threats theory of liability, it must allege charge all the elements required to prove such a theory—including the required *mens rea*. See Dkt. 34 at 5.

In sum, because none of the counts in the information adequately charge the subjective intent required to prove that Mr. Giglio's statements fall outside the protection of the First Amendment, the information must be dismissed.

### ii. The messages charged in the information objectively fail to state a true threat.

The information must independently be dismissed because Mr. Giglio's statements do not constitute true threats under an objective standard. Dkt. 34 at 6.

The government's argument to the contrary is premised on a critical inconsistency. The government acknowledges that this Court may not look beyond "the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). Yet, unable to justify the information on its terms, the government attempts to introduce extensive additional facts drawn from the Complaint. *See* Dkt. 38 at 3-5. It brings in uncharged statements purportedly made to Mr. Swalwell, uncharged statements made to other government officials, and a news article from 2024. *Id*. Even if this information were relevant, none of it can be considered at this stage. The question before this Court is simply whether Mr. Giglio's statements, on their terms, constitute a true threat as a matter of law.

The government urges that this question should be left to the jury, because dismissal on the indictment on this basis is proper "only if the language [is] so facially insufficient that no reasonable jury could find" the true threat standard met. Dkt. 28 at 12-14. This Court should reject that argument. Because the finding that a statement constitutes a true threat wholly exempts it from First Amendment protection, "only a very narrow class of statements satisfies the definition of a true threat." *Counterman*, 600 U.S. at 113 (Barrett, J., dissenting). It must be clear to a reasonable person that the statement is not mere hyperbole, an "imperative[]," "expression[s] of rage or frustration," or "predictions or exhortations to others," but rather

constitutes "a serious expression of an intent to kill or injure" another person. *United States v. Bagdasarian*, 652 F.3d 1113 at 1116, 1118, 1119 (9th Cir. 2011). It is for the Court, not the jury, to resolve that question. *Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 108 (1990) (plurality). And that high standard is not met here.

As Mr. Giglio explained in his opening brief, true threats share a few characteristics: they are realistic and specific, they tend not to be conditional, and they typically indicate that the speaker personally intends to commit violence. Dkt. 34 at 7-9. For example, a true threat might read: "On August 23rd, 2019, I will go to the WOMANS AID CENTER in Chicago on peterson. I will proceed to slaughter and murder any doctor, patient, or visitor I see in the area." *United States v. Sheikh*, 164 F.4th 629, 633 (7th Cir. 2026). Or a defendant might say: "we need to go back to the U.S. Capitol . . .  and this time we have to show up with our guns and we need to slaughter these motherfuckers . . . If anybody has a gun, give me it. I will go there myself and shoot them and kill them." *Id.* at 133. *United States v. Hunt,* 82 F.4th 129, 132 (2d Cir. 2023). These are true threats. Mr. Giglio's statements, which are little more than histrionic ramblings, come nowhere close to meeting that high standard. *See* Dkt. 34 at 6-11.

The government responds that a statement is not necessarily disqualified from meeting the "true threat" threshold merely because it is conditional, vague, or fails to indicate that the defendant intends to carry out the threat. Dkt. 38 at 14-15. That description of the law is true, insofar as it goes, but it ignores the fact that Mr. Giglio's statements need to be viewed *as a whole*. Taken together, the statements' use of conditional language, the vagueness, and the lack of personal language all would have led a reasonable listener to conclude the speaker was merely ranting—not seriously intending to commit a violent act. *See Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582, at *14 (C.D. Cal. June 13, 2025) (finding that "political hyperbole" did not constitute a true threat because it was *both* "expressly conditional" and "too imprecise").

The government argues that Mr. Giglio's threat would have been more concerning to a reasonable listener because he called Mr. Swalwell's office rather than posting on a public forum. Dkt. 38 at 16. But the number for Mr. Swalwell's office is publicly-listed—constituents

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

must call all the time. This is not a case where the defendant found private addresses and directly mailed threats, as in *United States v. Toltzis*. 2016 WL 3479084 *4 (N.D. Cal. 2016) (letters mailed directly to homes of victims, who were private individuals, not public figures).

The government next claims that Mr. Giglio's statements were more threatening because he referenced his ".308," a "specific weapon that he possessed around that time." Dkt. 38 at 15. But that fact is not alleged in the information, so it cannot be considered at this stage. *See supra* at p. 5. By contrast, the fact that Mr. Giglio made the calls from the opposite side of the country is alleged in the information itself, and therefore can be considered. *See* Dkt. 8 (claiming that initial call was made from Florida).

The government urges that facts unknown to the recipient of a threat should not form part of the analysis, but the sole case it cites does not support that proposition. Dkt. 38 at 15-16; *Bagdasarian*, 652 F.3d at 1121 (no discussion about whether contextual information that is not known to the listener is relevant). And in any event, the government's proposed rule cuts against its own argument: Since there is no evidence that the recipients of Mr. Giglio's calls were aware that he owned a firearm, the government cannot cite that factor as supporting a true threat finding. *See* Dkt. 38 at 15.

For all these reasons, neither of the statements charged in the information meet the objective definition of a true threat, meaning the information must be dismissed in its entirety.

**B.  47 U.S.C. § 223(a)(1)(c) is Unconstitutional As-Applied.**

In addition to the arguments raised above, Count Three must in the alternative be dismissed because § 223(a)(1)(c) violates the First Amendment as applied to Mr. Giglio. The government's opposition fails to persuade otherwise.

Contrary to the government's arguments, the First Amendment protects Mr. Giglio's speech: the voicemail charged in the information does not fall within the "speech is integral to criminal conduct" exception, *see infra* § II.B.i; not does it encompass only conduct (rather than speech), *see infra* § II.B.ii. In fact, § 223(a)(1)(C) is a content-based regulation on speech, meaning strict scrutiny applies, *see infra* § II.B.iii. Because the statute fails strict scrutiny, it is unconstitutional. Indeed, the statute cannot survive even the less-demanding intermediate

scrutiny standard that applies to content-neutral regulations on speech, *see infra* § II.B.iv. Accordingly, § 223(a)(1)(C) is unconstitutional as applied to Mr. Giglio's speech, and Count Three of the information must be dismissed.

### i. The exception for speech integral to criminal conduct is inapplicable.

Section 223(a)(1)(C) does not fall within the narrow exception for speech that is integral to criminal conduct as applied to Mr. Giglio's speech. *Contra* Dkt. 38 at 20.

It goes without saying that Congress cannot simply pass a law criminalizing protected speech, then justify that law on the grounds that it applies only to speech integral to criminal conduct. "That should be obvious, since the whole point of modern First Amendment doctrine is to protect speech against many laws that make such speech illegal." *See* Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 987 (2016).

Rather, as the Supreme Court has recognized, the "speech integral to criminal conduct" exception only applies where the proscribed speech is the means by which a separate unlawful act is committed. *See Chiles v. Salazar*, 146 S. Ct. 1010, 1026 (2026) (speech may be proscribed where it "bears a close causal connection to some *separately unlawful conduct* like a traditional crime") (emphasis added); Volokh, *supra*, at 1011 (speech must "help cause or threaten *other* illegal conduct . . . which may make restricting the speech a justifiable means of preventing that other conduct") (emphasis in original). The examples cited by the government prove the point: *Williams* involved speech offering unlawful child pornography, *Pittsburgh Press* involved speech soliciting unlawful employment, and *Giboney* involved picketing to induce an unlawful restraint on trade. Dkt. 38 at 20; *United States v. Williams*, 553 U.S. 285, 291-92, 299 (2008); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 492-93 (1949).

The government claims the speech here relates to the unlawful act of harassment—but that argument fails, because the government does not allege any harassment *separate* from the

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

phone calls themselves—rendering the government's argument circular.[1] That critical fact also serves to distinguish the Ninth Circuit's opinion in *Osinger*, which the government heavily relies on. *See* Dkt. 38 at 20-21; *United States v. Osinger*, 753 F.3d 939, 951 (9th Cir. 2014).

The defendant in *Osinger* engaged in the crime of interstate stalking. His stalking naturally involved some speech—calls, texts, even the creation of a website. 753 F.3d at 941. But, importantly, it also involved conduct: the defendant repeatedly showed up uninvited at his ex-girlfriend's home, knocking on her door and window in the wee hours of the morning. *Id*. He also showed up at her place of work. *Id*. Osinger's speech lost its First Amendment protection because it was calculated to facilitate his unlawful conduct. Had Osinger done nothing but send harassing texts, the "speech integral to criminal conduct" exception could not have applied, as Judge Watford explained in a thoughtful concurrence. *See id*. at 954 (Watford, J., concurring).

That is also why the D.C. Circuit did not apply the exception in *United States v. Popa*, 187 F.3d 672, at 673–74 (D.C. Cir. 1999). There, as here, Popa had committed no criminal conduct other than his harassing phone calls. *See id*. at 673–74. Though the case does not mention the speech integral to criminal conduct exception, the best reading of that case is that the court recognized that the law did not support such an expansive interpretation of the exception and declined to apply it. Otherwise, the D.C. Circuit could have avoided the need to analyze whether the statute violated intermediate scrutiny by simply holding the speech had been criminalized and applying the exception.

Just as in *Popa*, this case involves no criminal act by Mr. Giglio apart from the alleged § 223(a)(1)(C) violation of using his telephone to harass a public official with his speech. Crucially, the only non-speech "conduct" that Mr. Giglio is accused of here is the act of making a phone call. If that were considered independent criminal conduct sufficient to trigger

---

[1] It bears noting that there is no "harassment" exception to the First Amendment. *Osinger*, 753 F.3d at 953 (Watson, J., concurring). The government cannot simply claim speech constitutes harassment and label it unlawful on that basis alone.

the exception relied upon by the government, the exception would swallow the First Amendment's broad protections for speech. That cannot be the law.

When a defendant violates a criminal statute by "doing nothing but exercising a right of free speech, the exception for speech integral to criminal conduct shouldn't apply." *Osinger*, 753 F.3d 939, 954 (Watford, J., concurring). Because Mr. Giglio's speech did not facilitate separate unlawful conduct, the exception does not apply in this case.

### ii.    As applied to Mr. Giglio, Section 223(a)(1)(C) regulates speech, not conduct.

Predictably, the government argues that § 223(a)(1)(C) regulates only Mr. Giglio's conduct, not speech—but none of the arguments it raises are persuasive.

The government argues that criminal liability here attaches not because of the contents of Mr. Giglio's speech, but rather because of his conduct: specifically, his "inherently wrongful" mens rea coupled with "the anonymous nature of the call." Dkt. 38 at 19. This argument is easily rejected, because neither of those two elements actually involves conduct. First, as every first-year law student knows, mens rea refers to the defendant's state of mind, not his conduct. *See United States v. Hayashi*, 22 F.3d 859, 863 (9th Cir. 1993) (distinguishing "the actus reus, or act itself, and the mens rea, or mental element"). And second, the anonymous nature of the call does not somehow convert speech into conduct. On the contrary, the Supreme Court has held that "compelling individuals to speak a particular message" alters the content of speech and is therefore a content-based regulation. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) *Popa*, 187 F.3d at 675-76. The fact that § 223(a)(1)(C) banned anonymous calls—thereby requiring Mr. Giglio to identify himself— only confirms that it regulates speech, not conduct.

The government concedes that there is no Ninth Circuit precedent directly on point. Dkt. 38 at 18. However, it argues that the Ninth Circuit's decision in *United States v. Waggy* shows that § 223(a)(1)(C) applies only to conduct, not speech. 936 F.3d 1014, 1018 (9th Cir. 2019). That is wrong, for a few reasons.

*Waggy* involved an as-applied challenge to a Washington state law making it a crime to "with intent to harass, intimidate, torment or embarrass any other person, . . . make a telephone

call to such other person . . . [u]sing any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act." *Id*. at 1016.[2] Obviously, a statute that criminalizes making a telephone call using certain harassing words is directed at speech, not conduct. *Osinger* reached the opposite conclusion only because the Court there expressly deferred to the state courts' determination that the law regulated conduct rather than speech. *See id.* at 1018 ("we must follow the Washington courts' construction of [the] statute."); *see also id.* (quoting *State v. Dyson*, 74 Wash.App. 237, 872 P.2d 1115, 1120 n.5 (1994), as holding that "RCW 9.61.230(1) regulates conduct implicating speech, not speech itself"). Moreover, even assuming the Ninth Circuit had independently reached that conclusion, its holding is now "clearly irreconcilable" with the Supreme Court's recent decision in *Chiles*, 146 S. Ct. at 1023; *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (district courts are not bound by circuit precedent when "intervening Supreme Court authority is clearly irreconcilable with [the] prior circuit authority").

As *Chiles* explained, "[t]he First Amendment is no word game. And the rights it protects cannot be renamed away or their protections nullified by mere labels." *Chiles*, 146 S. Ct. at 1023. A law that criminalizes using profane and indecent language during a phone call does not regulate conduct, it directly targets "the spoken word is perhaps the quintessential form of protected speech." *Id*. at 1023. To the extent *Waggy* had held otherwise, its holding is not binding on this Court.

The unpublished decisions the government cites are even less persuasive. *See United States v. Rogers*, No. 25-1267, 2026 WL 1429748, at *1 (9th Cir. May 21, 2026) (holding that § 223(a)(1)(C) involved only conduct and not speech based entirely on *Waggy*, without considering *Chiles*); *United States v. Sandhu*, 740 F. App'x 595, 596 (9th Cir. 2018) (finding that subsection § 223(a)(1)(***D***), which criminalizes "mak[ing] . . . the telephone of another repeatedly or continuously . . . ring, with intent to harass," criminalizes only conduct and not speech). And the out-of-circuit cases cited by the government are inapposite. Those cases

---

[2] The statute at issue in *Waggy* contains other subsections, but the First Amendment challenge before the Court was only to subsection (1)(a). *See Waggy*, 936 F.3d at 1018 & n.4.

rejected facial, vagueness, and overbreadth challenges to § 223(a)(1)(C). *See United States v. Eckhardt*, 466 F.3d 938, 944 (11th Cir. 2006) (rejecting vagueness and overbreadth challenges); *United States v. Bowker*, 372 F.3d 365, 379-83 (6th Cir. 2004), *cert. granted, judgment vacated*, 543 U.S. 1182 (2005). Mr. Giglio's challenge is not based on either vagueness or overbreadth grounds, and does not argue § 223(a)(1)(C) is unconstitutional on its face, but merely as applied to him. Far from foreclosing an as-applied challenge, *Bowker* actually acknowledged that § 223(a)(1)(C) could have unconstitutional applications. *See Bowker*, 372 F.3d at 379.

In the unlikely event this Court finds that § 223(a)(1)(C) does not directly regulate speech, it is clear that at the very least § 223(a)(1)(C) regulates the speech-creating process of placing a phone call. Dkt. 34 at 15-16. Because that process is subject to First Amendment protections, § 223(a)(1)(C) is subject to intermediate scrutiny, even if it is content-neutral. *Project Veritas*, 125 F.4th at 952. The government responds that "the act of making an anonymous telephone call for a harassing purpose has never been recognized as a 'speech creation activity,'" but in doing so, it frames the question at the wrong level of generality. The question in *Project Veritas* was whether the "act of recording" was a speech-creating process, not whether "the act of creating a recording without giving notice to conversation participants" was a speech-creating process. 125 F.4th at 944.[3]

### iii. Because § 223(a)(1)(C) regulates the contents of Mr. Giglio's speech, strict scrutiny applies.

Content-based restrictions on speech are subject to strict scrutiny, a demanding standard that requires the government to prove its restriction on speech is "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). As explained in

---

[3] The government further claims that it does not matter whether § 223(a)(1)(C) involves a speech-creation activity because the end-product speech is not protected, which the government argues is not the case here because any speech implicated is speech integral to criminal conduct (specifically, harassment). Dkt. 38 at 23. As already explained, that argument is circular. The speech integral to criminal conduct exception does not apply. Nor does the true threats exception render Mr. Giglio's speech unprotected.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

12

the opening brief, § 223(a)(1)(C) cannot survive when that level of scrutiny is applied. Dkt. 34 at 16.

The government responds that strict scrutiny is not the right standard of review because § 223(a)(1)(C) does not restrict the content of Mr. Giglio's speech. Dkt. 38 at 21. It claims "the law restricts expressive conduct only for reasons unrelated to its content," because the statute "restricts the 'expressive conduct' of making an anonymous, harassing telephone call 'without regard to the message [such conduct] may convey.'" *Id.* (quoting *Chiles*, 146 S. Ct. at 1026). That argument is perplexing, to say the least, because to describe a phone call as "harassing" is to reference the message the phone call conveys—meaning the law is content-based.

"[L]aws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994). Thus, in *Project Veritas*, a law that banned any recordings taken without the recorded party's consent, regardless of what was being recorded, was found not to be content-based. *Project Veritas v. Schmidt*, 125 F.4th 929, 950 (9th Cir.). But in *Garcia*, a ban on recording only one type of event—a sideshow—was found to be content-based. *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1232 (9th Cir. 2025). Applying that principle here, the government concedes that § 223(a)(1)(C) does not apply to all calls, but merely "harassing" calls. That shows the regulation is content-based.

The government notes that § 223(a)(1)(C) does not prevent discussion of certain viewpoints or topics, but that does not make the law any less content-based. A law can regulate the content of speech without banning discussion of an entire topic. For instance, the Court in *Chiles* found the Colorado law was a content-based regulation on speech even though it did not entirely forbid *Chiles* from discussing the topic of "sexual orientation or gender identity." 146 S. Ct. at 1023. And the Court treated the question of whether the law engaged in viewpoint discrimination as a distinct inquiry: it first found that the Colorado law was content-based, then separately found that the law discriminated based on viewpoint. *Id.* at 1024. Thus, the fact that § 223(a)(1)(C) does not ban discussion of entire topics or apply only to certain viewpoints does not mean the law is not content-based.

Moreover, the government's attempt to distinguish the defense's "I love ponies" hypothetical only further proves that § 223(a)(1)(C) regulates the content of Mr. Giglio's speech. Dkt. 38 at 23. The government argues that § 223(a)(1)(C) could be constitutionally applied if Mr. Giglio had called and hung up fifty times; made the same call fifty times in a row; screeched in a blood-curling voice; or called someone whom he had previously abused. *Id*. But the entire point of an as-applied challenge is that it contends "that the law is unconstitutional as applied to the litigant's particular speech activity*, even though the law may be capable of valid application to others*." *Project Veritas*, 125 F.4th at 939–40 (internal citations omitted) (emphasis added).

An as-applied challenge requires this court to "only assess the circumstances of the case at hand." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022). In this case, Mr. Giglio has not been charged with making a flurry of calls—in fact, he made only two calls, separated by more than two months. Dkt. 8 at 2-3. He has not been charged with screaming, much less calling someone with whom he had a prior history of abuse. *See generally* Dkt. 8. He is charged only with making a phone call to the office of a U.S. Representative. *Id*. The facts the government cites in support of criminal liability are (1) Mr. Giglio's failure to identify himself and (2) the words he used on the call—both of which are based on the call's content. Dkt. 8 at 2-3. If nothing else other than the content of the call were different—if all other facts remained the same, except that Mr. Giglio had identified himself and said "I love ponies!"—he would not face criminal prosecution. Because the critical facts making this a criminal offense are content-based, § 223(a)(1)(C) functions as a content-based restriction on speech as applied to Mr. Giglio.[4] Strict scrutiny is warranted, and the law fails under that demanding standard. *See* Dkt. 34 at 16.

---

[4] The government argues that, if the court found § 223(a)(1)(C) constitutes a content-based regulation on speech, it would also have to find that "every threat, extortion, solicitation, and fraud statute" is content based, because it requires "examination of the defendant's words to determine whether the crime has occurred." Dkt. 38 at 22. That argument misses the mark. Even if the statutes the government references were found to be content-based regulations on speech, that would not necessarily make them unconstitutional. Much of the speech proscribed by those statutes would be unprotected—for instance, fraud and true threats fall outside the

**iv.   Section 223(a)(1)(C) cannot survive even intermediate scrutiny.**

Even if the government were correct that intermediate scrutiny applies, § 223(a)(1)(C) is so overbroad that it cannot survive even that lower standard. *See Popa*, 187 F.3d at 676. The government hardly attempts to argue otherwise. Its primary argument seems to be that the statute's specific intent requirement renders it narrowly tailored. Dkt. 38 at 24. "Certainly the statute would be broader still if it required only a general intent," but the mere fact "[t]hat § 223(a)(1)(C) is not as broad as it could be . . . does not suggest that it is as narrow as it must be to pass intermediate scrutiny." *Popa*, 187 F.3d at 677.

A statute satisfies intermediate scrutiny where it: (1) advances a "substantial" governmental interest; (2) does not "burden substantially more speech than is necessary" (i.e., the statute must be narrowly tailored); and (3) leaves open "ample alternative channels for communication." *Ward v. Rock Against Racism*, 491 U.S. 791, 798-800 (1989). Here, § 223(a)(1)(C) fails the second and third prongs of this test.

Again, even assuming the government has a substantial interest in protecting the public from harassing phone calls, § 223(a)(1)(C) burdens substantially more speech than necessary to achieve this purpose.[5] Dkt. 34 at 16-18. As the Motion to Dismiss explains, the statute could just as well protect the public from harassment if it made an exception for speech involving politics or other matters of public concern, or if the statute's reach were limited to phone calls made to private (rather than publicly-listed) phone numbers. *Id.* at 18. The government does not even attempt to argue otherwise. That failure is telling given that Mr. Giglio is accused of calling the publicly-listed number for the office of a political official. *See Popa*, 187 F.3d at 678 (finding that statute failed strict scrutiny in part because it restricted the ability to communicate with elected officials).

---

scope of the First Amendment. *Chiles*, 146 S. Ct. at 1021. And no one disputes that solicitation to commit a separate crime would be properly subject to the "speech integral to criminal conduct" exception. *See supra* at § II.B.i. Moreover, even a content-based statute is not unconstitutional so long as it is sufficiently narrowly tailored. *See Chiles*, 146 S. Ct. at 1021.

[5] It bears noting that the statute is also underinclusive: it offers the public no protection from harassment so long as the harasser discloses his identity.

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

Moreover, this is not a case where the statute leaves open "ample alternative channels for communication." *Ward*, 491 U.S. at 798-800. Section 223(a)(1)(C) applies not only to phone calls, but also broadly to the use of "any telecommunications device," which encompasses communications that take place over the Internet. *See* 47 U.S.C. § 223(i)(1)(C). This includes emails, website comments, and direct messages through social media sites such as Facebook, Instagram, and Twitter (now known as "X"). The statute thus encompasses the majority of the methods of communication used today.

To be sure, someone could bypass § 223(a)(1)(C) by speaking face-to-face, or mailing a letter. But again, the person Mr. Giglio was trying to contact was an elected official. How many Americans today have the opportunity to speak to a United States Representative face to face? How many Americans still send letters in the mail? The alternative channels § 223(a)(1)(C) leaves open are simply not adequate. *Cf. Project Veritas*, 125 F.4th at 958 (ban on secretly recording conversations left open ample alternative channels to engage in journalistic speech activities, including "talking with sources, reviewing records, taking photographs, recording videos openly during public and semi-public meetings and events, recording videos that do not capture oral conversations, recording conversations after announcing it is doing so, and making use of Oregon's freedom-of-information laws.").

In sum, because § 223(a)(1)(C) is so overbroad, the statute fails regardless of whether strict or intermediate scrutiny is applied. Dkt. 34 at 16-19. And, for the reasons already stated above, Mr. Giglio's voicemail does not meet the requirements to be classified as a true threat that falls outside First Amendment protections. *See supra* at § II.A. Accordingly, Count Three of the information must be dismissed on First Amendment grounds.

## III. CONCLUSION

For the aforementioned reasons, Mr. Giglio respectfully urges the Court to grant his motion to dismiss the information on First Amendment grounds.

Respectfully submitted,

MOTION TO DISMISS UNDER THE FIRST AMENDMENT
*GIGLIO*, CR 25–264 VC

16

June 18, 2026                          JODI LINKER
Dated                                  Federal Public Defender
                                       Northern District of California

                                       _____/S_____
                                       LISSET M. PINO
                                       Attorney for Geoffrey Giglio