JODI LINKER, Bar Number 230273
Federal Public Defender
Northern District of California
TAYLOR FATHERREE, Bar Number 358709
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Taylor_Fatherree@fd.org

Counsel for Geoffrey Giglio

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GEOFFREY GIGLIO,<br>Defendant. | **Case No.:** CR 25–264 VC<br>**MOTION TO COMPEL DISCOVERY** |

TO: THE UNITED STATES, PLAINTIFF; AND CRAIG MISSAKIAN, UNITED STATES ATTORNEY; AND ASSISTANT UNITED STATES ATTORNEYS AMANI FLOYD AND ANNE HSIEH

PLEASE TAKE NOTICE that on October 28, 2026 at 2:00 p.m. in the courtroom of the Honorable Vince Chhabria, or as soon thereafter as the matter may be heard, counsel for Geoffrey Giglio will move to compel discovery. This motion is based on the attached memorandum of points and authorities, Federal Rule of Criminal Procedure 16, the Due Process Clause of the Fifth Amendment to the United States Constitution, *Brady v. Maryland*, 373 U.S. 83 (1963), and any argument made at the motion hearing.

## I. BACKGROUND

The above-titled matter is currently scheduled for a jury trial beginning on December 1, 2026. Mr. Giglio is charged in a four-count information with violations of 18 U.S.C. § 115(a)(1)(B); 18 U.S.C. § 875(c), and 47 U.S.C. § 223(a)(1)(C). Mr. Giglio is being charged with making threatening calls to former congressman Eric Swalwell's regional office. The calls that are the basis for the charges were initially reported to the United States Capitol Police (USCP) and later investigated by the FBI.

Defense counsel made its initial discovery request on July 30, 2025. Declaration of Taylor Fatherree in Support of Motion to Compel (Fatherree Decl.) ¶ 2, Exhibit A. On March 2, 2026 and April 20, 2026, the defense made additional discovery requests involving, among other things, material and information from the United States Capitol Police (USCP). Exs. B and C.

On September 25, 2026, the government made its third production of discovery to the defense. Within that discovery production were several emails from separate USCP special agents within the Investigations Division, Threat Assessment Section.

The first email, dated April 1, 2025, is from a special agent of the USCP Investigations Division, Threat Assessment Section to staff at Mr. Swalwell's regional office. The email references two voicemails left by Mr. Giglio on March 27, 2025. The second of those voicemails is the basis for Counts One through Three in the instant case. The email from the USCP Threat Assessment special agent states in part: "the content of these calls do not meet the threshold to be considered a true threat, but are concerning, none the less." Fatherree Decl. ¶ 5. That email also attached a photo sheet of Mr. Giglio to be posted in the regional office that directs staff to call UCSP if Mr. Giglio makes other concerning communications to the office. *Id*. ¶ 6.

The second email, dated January 6, 2026, is from a different special agent with the USCP Investigations Division, Threat Assessment Section and directed to the government's FBI case agent in this matter. That email, referring to all reported communication from Mr. Giglio with congressional offices, states in part: "As discussed previously, USCP document

[sic] all Congressional reporting referencing inappropriate, threatening, and harassing communications. None of the communications on file with USCP were deemed criminal in nature." *Id*. ¶ 7.

In a third email dated July 1, 2025, a third UCSP Threat Assessment Section special agent provided FBI agents with copies of the voicemails left for Eric Swalwell's regional office by Mr. Giglio on March 27, 2025. *Id*. ¶ 8. The FBI agents were seeking these because Mr. Giglio had at that point been arrested and charged by complaint with threatening to assault a federal official in the Central District of California.[1] *Id*. In previously sent discovery, the defense received a USCP investigative report written by the same special agent that provided the FBI with the voicemails approximately two weeks later. *Id*. ¶ 9.

On September 28, 2026, the defense emailed the government the following:

> Friday's disclosure contained important Brady material that has been in the prosecution team's possession for a very long time (171750-17177, 17185-17192), well before the previously scheduled trial dates and the negotiations in this case. Some of this was communicated by USCP in April 2025, and some is to your case agent in January 2026. Why was this not disclosed as soon as possible? Due to this we're very concerned that more Brady material we are entitled to exists. We have made the request for this exact material and are reiterating our request for similar material or other Brady material. Please send this as soon as possible.

Fatherree Decl. ¶ 10. The parties agreed to meet and confer and did so on October 2, 2026. *Id*. ¶ 11. As a result of that meeting, the parties agreed to stipulate to compel USCP to produce some information already requested in the defense discovery request and previously requested by the government. Dkt. 58. The parties were unable to agree that the above emails constitute *Brady* material or to compel additional related material from USCP.

**ARGUMENT**

The Due Process Clause of the Fifth Amendment requires federal prosecutors to disclose information that would tend to exculpate [a criminal defendant] or reduce the penalty."

---

[1] The complaint transcribes both calls in their entirety in the probable cause section, but references a date of offense corresponding to a communication by Mr. Giglio to FBI agents that were looking for him.

*Brady v. Maryland*, 373 U.S. 83, 88 (1963). This includes anything that is "potentially exculpatory or impeaching." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th. Cir. 2013). The post-conviction elements of a *Brady* violation are: 1) the evidence is favorable to the accused; 2) it was suppressed by the government; and 3) it is material—meaning that there is a reasonable probability the result would have been different had the evidence been disclosed. *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008) (internal citation omitted).

The Ninth Circuit has found that the post-conviction materiality standard for *Brady* information should not be applied at the pretrial stage. *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024). Instead, the government must disclose information that is "favorable to the defense." *Id*. Information need only have minimal value in order to be favorable to the defense for *Brady* purposes. *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

**i. This information is favorable to the defense for *Brady* purposes.**

Statements are only true threats if, in part, "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1074 (9th Cir. 2002) (internal quotation omitted). Whether speech is a true a threat must be evaluated in "the entire factual context of the defendant's statements." *United States v. Mitchell*, 812 F.2d 1250, 1255 (9th Cir. 1987) (overruled on other grounds). Factual context includes surrounding events and the reaction of the listeners. *Id*.

A determination by investigating law enforcement agents specializing in threat assessment that Mr. Giglio's statements did not constitute true threats obviously undermines the government's current theory that they do. This determination also is part of the initial listener response to Mr. Giglio's communications. The fact that at least some of the listeners did not take Mr. Giglio's statements as threats is favorable to the defense in that it weakens the objective prong portion of the true threats analysis. *See Planned Parenthood,* 209 F.3d at 1074 (true threat finding requires, in part, that "the statement would be interpreted *by those to whom*

*the maker communicates the statement* as a serious expression of intent to harm or assault.") (emphasis added). That is sufficient to require disclosure under *Brady*. *See Comstock*, 786 F.3d at 708 "[i]f information would be advantageous to the defendant, or would tend to call the government's case into doubt, it is favorable." (internal citations and punctuation omitted); *see also Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) ("Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes").

**ii. USCP is a part of the prosecution team for *Brady* purposes.**

Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Prosecutors are "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989); *see also United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (FDA deemed part of the prosecution team).

The government's disclosure obligations under *Brady* and Rule 16 extend to evidence within its "possession, custody or control." Fed. R. Crim. P. 16(a)(1)(E). That obligation is not limited to evidence actually known to the prosecutor: the prosecutor must "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437. But it does not encompass evidence held by every component of the federal government. Rather, "[t]he government's *Brady* and Rule 16 obligations extend to 'files maintained by branches of government closely aligned with the prosecution.'" *United States v. Bingert*, No. 1:21-cr-91-1 (RCL), 2023 WL 3203092, at 3 (D.D.C. 2023) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).The Department of Justice's discovery policy likewise defines the prosecution team to include federal, state, and local law-enforcement officers and other government officials participating in the investigation and prosecution. *See* Justice Manual §§ 9-5.001(B)(2), 9-5.002, 9-5.002, (Step I). It specifically instructs prosecutors to request access to files and/or production of potentially discoverable material from agencies outside DOJ. *See id.*

The USCP is a federal civilian law enforcement agency that safeguards the Congress, Members of Congress, employees, visitors, and congressional buildings and grounds from crime, disruption, and terrorism. The United States Capitol Police are subject to *Brady* obligations when they participate in the investigation or prosecution of a criminal case. *See*, *e.g.*, *United States v. Nichols*, No. 1:21-CR-00117-RCL, 2023 WL 6809937, at *12 (D.D.C. Oct. 16, 2023) ("This Court has held that the USCP 'is a part of the prosecution team' in this case such that 'evidence in its possession falls within the scope of the government's Brady obligations.'").

USCP clearly forms part of the prosecution team for *Brady* purposes here. USCP participated in investigating Mr. Giglio. It is the initial federal law enforcement agency that Mr. Giglio's communications were reported to. Special agents from the ***Investigations*** Division's Threat Assessment Section reviewed those communications and assessed whether they constituted true threats or criminal conduct. They created a photo sheet of Mr. Giglio for the office to post directing staff members to call the USCP Threat Assessment Section if Mr. Giglio made concerning communications the office. They created an investigative report related to those communications. They communicated the results of their threat assessment to both staff at the regional office and the FBI case agent. *See Wood*, 57 F.3d at 737 (FDA was part of the prosecution team in part because the FDA was charged with administering the relevant statute and had "consulted with the prosecutor" in the lead-up to prosecution). The fact that the FBI later became involved does not negate USCP's initial investigation of Mr. Giglio's communications. In fact, it was a USCP special agent in the Threat Assessment Section who provided copies of Mr. Giglio's voicemails to the FBI after he had been initially charged in the Central District of California.

**iii. The Court should compel the production of other *Brady* and Rule 16 material.**

The defense requests that the Court exercise its discretion in crafting a *Brady* remedy to order the government to provide prompt discovery. *See, e.g., United States v. Blanco*, 392 F.3d 382, 394 (9th Cir. 2004) (directing the district court to "order full disclosure" of any material

related to a *Brady* violation for "for prophylactic reasons") (quoting *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993))). Specifically, the defense requests:

1) Any determinations or statements that communications by Mr. Giglio do not constitute true threats, are not criminal in nature, or are not particularly serious. Any internal communications within USCP regarding supervisory review of Mr. Giglio's communications or threat level. Any notes, discussions, or other documentation related to the same.
2) Any communications by USCP to Mr. Giglio to discuss his contact with Mr. Swalwell's regional office or to ask him to cease contacting the office.

"Rule 16 of the Federal Rules of Criminal Procedure grants defendants a broad right to discovery." *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013). The government must disclose all material evidence. Fed. R. Evid. 16(E)(i). "Materiality is a low threshold; it is satisfied so long as the information . . . would have helped to prepare a defense." *United States v. Soto–Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (internal quotation marks omitted). "The test is not whether the discovery is admissible at trial, but whether the discovery may assist [the defendant] in formulating a defense, including leading to admissible evidence." *Id.* This includes both inculpatory and exculpatory information, *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013), and even information that could "cause[] a defendant to completely abandon a planned defense and take an entirely different path." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotation marks omitted).

Rule 16 "requires the government, upon request, to produce materials 'within the possession, custody or control of *the government*'"—not just the "prosecuting attorney." *United States v. Cardenas-Flores*, 974 F.2d 1343 (9th Cir. 1992) (unpublished decision). Here, the requested discovery is from a federal law enforcement agency: USCP. It is within the government's possession, custody, and control. The discovery requested here is not only material, some of it may well contain *Brady* material, which prosecutors have an affirmative

duty to disclose, even absent any defense request. This Court should order the requested discovery.

October 13, 2026
Dated

JODI LINKER
Federal Public Defender
Northern District of California

/S
TAYLOR FATHERREE
Attorney for Geoffrey Giglio