CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ANNE C. HSIEH (CABN 288159)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5596
FAX: (408) 535-5066
Anne.Hsieh@usdoj.gov
Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEOFFREY CHAD GIGLIO,<br><br>Defendant. | Case No. 3:25-CR-00264-VC<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF OCTAVIO CHOI**<br><br>Hearing Date: November 17, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 3, 17th Floor<br><br>Hon. Vince Chhabria |

## I. INTRODUCTION

This Court should deny Defendant Geoffrey Chad Giglio's Motion to Exclude Opinions and Testimony of Octavio Choi ("Motion to Exclude Dr. Choi") (Dkt. 59). There is no basis under Federal Rule of Criminal Procedure 16 to exclude Dr. Choi, given the government's adequate compliance with the Rule. Furthermore, Dr. Choi is clearly qualified to testify as an expert witness in forensic neuropsychiatry who can assist the jury in understanding any evidence or claims Giglio might raise at trial with regard to the impact of his stroke or other cognitive or psychological conditions on his mental culpability for the charged offenses. Because Dr. Choi's anticipated expert testimony is both reliable and relevant under Rule 702, the Court should deny Giglio's motion to exclude his testimony at trial.

## II. BACKGROUND

Defendant Geoffrey Chad Giglio ("Giglio") is currently scheduled to proceed to a jury trial on December 1, 2026, on the four counts charged against him in the above-captioned case involving the following offenses: Influencing a Federal Official by Threat in violation of 18 U.S.C. § 115 (Counts One and Four), Communicating a Threat in violation of 18 U.S.C. § 875 (Count Two), and Anonymous Telecommunications Harassment in violation of 47 U.S.C. § 223(a)(1)(C) (Count Three). The charges against Giglio stem from two phone calls that Giglio made, one in March 2025 and the other in June 2025, to the Castro Valley, California district office of now-former United States Representative Eric Swalwell ("Congressman Swalwell"), in which Giglio communicated harassing and threatening messages towards Congressman Swalwell and his staff.

Evidence in this case indicates that Giglio suffered a stroke in 2016, which Giglio mentions in several of his encounters with law enforcement and communications with others. Additionally, as reciprocal discovery in this case, the government received from Giglio the following evidence of Giglio's stroke and other cognitive and mental health conditions: (1) a letter and clinical notes from Dr. Steven Long, Giglio's primary care physician, describing Giglio's left pontine stroke in 2016 and reported concussions and suspected traumatic brain injury, and (2) a psychological evaluation from Dr. Quincee Gideon describing her opinion that Giglio meets the diagnostic criteria for: Neurocognitive Disorder Due to Another Medical Condition (Cerebrovascular Disease), Unspecified Personality Disorder with

Borderline Features, and Somatic Symptom Disorder. *See* Exhibits B (Dr. Long's Letter and Notes) and C (Dr. Gideon's Report).

In late May 2025, this case was reassigned to the current undersigned AUSAs. *See* Dkts. 32, 36. Recognizing the possibility of a defense under Federal Rule of Criminal Procedure 12.2 or related mental defect claims in this case, and the potential need to obtain an expert to evaluate such claims, the government agreed to stipulate to a continuance of trial, primarily so that the parties could obtain experts to continue investigation of these issues. *See* Dkt. 43. The parties contacted the Court, which set a scheduling status conference on June 30, 2026. Dkt. 37. At that conference, the Court granted in part the continuance request, setting the new trial date for September 28, 2026. The Court also set a deadline of July 24, 2026 for required notices, including Giglio's Rule 12.2 notice. Dkt. 42. Giglio subsequently filed an unopposed motion to continue trial to November 30, 2026, citing, in part, defense counsel availability, as well as delays with an anticipated psychological evaluation of Giglio by a defense expert who "was retained after numerous records from Mr. Giglio's doctors" to "determin[e] what type of evaluator would be appropriate." Dkt. 43. On July 13, 2026, the Court granted Giglio's motion, noting, "It would be reasonable to deny the motion for a further continuance of the trial date," but "given the unique challenges identified in the motion to continue, one final continuance will be allowed and the trial will be continued to December 1[.]" Dkt. 44. The parties thereafter stipulated to an amended pretrial motions schedule, Dkt. 46, which the Court granted, Dkt. 27.

In anticipation of a potential Rule 12.2 defense, the government contacted Dr. Choi for assistance as a potential expert. On August 14, 2026, the deadline for Giglio's Rule 12.2 notice passed. To date, he has not provided the government any such notice. Given the lack of Rule 12.2 notice, the government assumed, but remained uncertain, that Giglio would not be presenting any evidence of his stroke or other cognitive/mental conditions at trial. However, the government ultimately decided it was prudent to retain Dr. Choi as an expert consultant who could testify as a witness in the event that Giglio *did* intend to introduce such evidence at trial, either through a not-yet-disclosed expert or lay testimony.

On September 18, 2026, the government provided an expert disclosure letter "[i]n the interest of caution, and to any extent required under Federal Rule of Criminal Procedure 16(a)(1)(G)," notifying

Giglio of its intent to retain Dr. Choi as "an expert consultant in forensic psychiatry, who may possibly testify as an expert witness at trial . . . ." Dkt. 59-1. In the notice, the government stated:

> At this time, based on the lack of any defense notice required under Federal Rule of Criminal Procedure 12.2, the government does *not* anticipate the need to introduce Dr. Choi as an expert witness in this trial. For the same reasons, the government has also not yet sought any opinions, evaluation, or reports from Dr. Choi at this time. However, should the defense seek to introduce or elicit any evidence at trial of Mr. Giglio's prior stroke, possible brain injury, and/or any other medical, neurological, psychological, or mental condition, injury, disease or defect, or to argue that any such condition bears on Mr. Giglio's culpability for the charged offenses, the government intends to seek Dr. Choi's assistance in evaluating, and potentially offering testimony to rebut, any such evidence or claims. As such, the government reserves the right to supplement this notice and provide any further information, opinions, and/or reports that it may obtain in the future from Dr. Choi.

*Id*. The notice made clear that the government's intent to present Dr. Choi as an expert witness was conditioned entirely on whether Giglio would introduce at trial any evidence of his stroke or any other mental defect or condition. The notice also provided a synopsis of Dr. Choi's anticipated testimony "[s]hould the defense seek to introduce at trial" any such evidence, as well as his qualifications, list of recent cases and publications, and CV. *Id*. That same day, Giglio provided an expert disclosure to the government, but did not notice any psychiatric-type expert to provide opinions specific to Giglio's cognitive injuries or mental conditions. The only expert noticed by Giglio was a computer scientist who is an expert "in online harassment, violent communications, and conspiracy theories," but whose anticipated testimony included opinions regarding "psychological research" on "two major theories that predict people's likelihood to believe in conspiracy theories," including "distrust in sources of truth" and "poor misinformation processing skills." *See* Dkt. 61-2.

On October 9, 2026, Giglio filed the instant Motion to Exclude Dr. Choi. Dkt. 59. In the motion, Giglio claims that "the defense has no plans to introduce *expert testimony* on Mr. Giglio's mental state," then defends in the next sentence its ability to "merely mention[]" Giglio's "prior stroke" at trial. Dkt. 59 at 5 (emphasis added). After receipt of Giglio's motion, the government contacted Dr. Choi on October 15, 2026, to ask if he could provide any preliminary opinions or observations from a review of the case evidence, despite the limited medical evidence available and lack of neurological testing or

imaging that Dr. Choi would normally need to provide a reliable assessment regarding the extent and impact of Giglio's stroke or other mental conditions. *See* Exhibit A, Supplemental Notice Regarding Rule 16 Expert Disclosure. Dr. Choi agreed to provide a summary report of his preliminary opinions and observations based on his initial review of the evidence, and delivered that report to the government on October 23, 2026. *Id.* The report was transmitted to Giglio in a supplemental Rule 16 notice on the same day, and attached to this motion as Exhibit A. *Id.*

## III. LAW AND ARGUMENT

### A. Legal Standards

Under Rule 16(a)(1)(G)(i), the government must disclose in writing, at the defendant's request, information regarding expert testimony it intends to use at trial "during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C)." The contents of the expert witness disclosure must include: (1) a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C); (2) the bases and reasons for them; (3) the witness's qualifications, including a list of all publications authored in the previous 10 years; and (4) a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition. Fed. R. Crim. P. 16(a)(1)(G)(iii). Reciprocally, under Rule 16(b)(1)(C), the defendant must disclose the same information for its experts if: (1) the government provides its expert disclosure under (a)(1)(G), or (2) the defendant "has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition."

Under Rule 12.2, the defendant is required to provide timely notice of: (a) its intent "to assert a defense of insanity," or (b) its intent "to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt." Fed. R. Crim. P. 12.2(a), (b). The federal insanity defense is defined in 18 U.S.C. § 17, which establishes an "affirmative defense" where "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." If the defendant provides notice of either defense under Rule 12.2(a) or 12.2(b), the government can move for an order compelling the defendant to submit to a

mental examination. Fed. R. Crim. P. 12.2(c).

Under Federal Rule of Evidence 702, a witness may testify as an expert if the witness is "qualified as an expert by knowledge, skill, experience, training, or education" and "the proponent demonstrates to the court that it is more likely than not that:"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Court must play a "gatekeeping" role with respect to enforcing Rule 702, admitting any proffered expert testimony only after ensuring it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "Trial courts must exercise reasonable discretion in evaluating and in determining how to evaluate the relevance and reliability of expert opinion testimony." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

**B. The Government Has Complied with Rule 16**

There is no basis to exclude Dr. Choi's testimony under Rule 16's notice requirements. Based on the government's initial and supplemental expert disclosures pertaining to Dr. Choi, Giglio has received adequately detailed notice of Dr. Choi's anticipated testimony to satisfy the content requirements of Rule 16(a)(1)(G)(iii), and "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii).

As an initial matter, the government's notice on September 18, 2026, was more than sufficient at the time, particularly given that such a disclosure was not technically required at all under the Rule. As stated in the notice, the government did not, at the time of the disclosure, "anticipate the need to introduce Dr. Choi as an expert witness in this trial," based on its assumption that Giglio's lack of Rule 12.2 notice meant that he would not be introducing any evidence of his stroke or other cognitive or mental conditions that might improperly raise a Rule 12.2 defense. For the same reason, the government had not yet obtained any report or opinions from Dr. Choi at that time, as there was little information for Dr. Choi to evaluate

until the government received either further evidence of Giglio's mental conditions, or indication of Giglio's intent to introduce such evidence at trial (either through an expert disclosure, belated Rule 12.2 notice, or other notices or pleadings). Nonetheless, in the interest of caution and transparency, the government still provided a Rule 16 disclosure to notify Giglio of its expert consultant, which it had retained in light of the uncertain possibility that Giglio might still elicit evidence of his cognitive or other mental conditions, which would then trigger the government's need to present Dr. Choi as a witness.

After Giglio provided his expert disclosure and filed his Motion to Exclude Dr. Choi, it became more apparent to the government that Giglio *does* intend to elicit evidence of his stroke and/or other mental conditions—either through lay witnesses or an expert not qualified to opine on neurological injuries or psychiatric conditions—which would warrant the testimony of Dr. Choi to help the jury understand the evidence and to rebut any improper or inaccurate lay inferences raised by such medical or mental health evidence or claims. As such, the government asked Dr. Choi to provide a synopsis of any preliminary opinions he could form that might be helpful to the jury based on the evidence the government had available. That preliminary summary report, which has been shared with Giglio in a supplemental notice, coupled with the government's initial notice, more than suffices to meet the requirements of Rule 16. The notices together adequately provide: (1) a complete statement of all opinions that the government will elicit from Dr. Choi in its case-in-chief, or during its rebuttal to counter testimony that Giglio has timely disclosed under (b)(1)(C); (2) the bases and reasons for them; (3) Dr. Choi's qualifications, including a list of all publications authored in the previous 10 years; and (4) a list of all other cases in which, during the previous 4 years, Dr. Choi has testified as an expert at trial or by deposition.

Indeed, in his motion, Giglio asks the Court, as a remedy for the purportedly deficient disclosure, to "order the government to produce a disclosure for Dr. Choi that properly describes and identifies his opinions." Dkt. 59 at 6. Because the government has done precisely that with its supplemental disclosure, and done so sufficiently in advance of trial to afford Giglio "a fair opportunity . . . to meet the government's evidence," Giglio's argument for exclusion under Rule 16 should—at a minimum—be rejected as moot.

**C. Dr. Choi is Qualified and His Testimony Reliable**

Dr. Choi has been noticed as an expert in forensic psychiatry and forensic neuropsychiatry. Dkt.

59-1 at 2. In his Motion to Exclude Dr. Choi, Giglio argues that Dr. Choi is not qualified to opine on the cognitive impacts of a stroke because he appears to have "never evaluated or treated patients for poststroke cognitive impairment (PSCI)" and does not appear to have "any experience evaluating patients who suffer from cognitive decline not only due to the stroke itself but also due to other neuropathologies." Dkt. 59 at 6-7. What Giglio misses is that Dr. Choi has over twenty years of clinical experience and extensive formal training in assessing the relevance and validity of psychiatric, neurological, and neuropsychiatric findings in a forensic setting. *See* Exhibit A at 2-4; *see also* Dkt. 59-2. By necessity, he is an expert on the brain, brain function, brain injury, and determinants of cognition and behavior. Exhibit A at 3. As a Clinical Professor in Psychiatry at Stanford, the founding Director of Stanford's Forensic Psychiatry Fellowship, the former Director of Forensic Evaluations at the Oregon State Hospital, and as a medical and philosophy doctor in Neurosciences, he routinely studies and opines on brain-behavior correlations and neural causation, and studies brain damage and medical and genetic conditions that affect the mind. *Id*. at 2-4. Indeed, he has spent decades treating over 1,000 patients with traumatic brain injuries, strokes, brain tumors, and other brain defects in clinical settings; has specialized in cases involving psychiatric illness, brain function, brain injury, and the biological determinants of cognition and behavior (e.g., genetics, medical conditions, neurological conditions, hormones, substances, and medications) in both children and adults in his forensic capacity; and has testified in dozens of legal matters involving questions of neuroscience. Exhibit A at 3, 4. Dr. Choi is clearly qualified to opine on the cognitive impacts of a stroke.

Furthermore, his opinions are based on: (1) his preliminary review of the evidence in this case, including the limited mental and medical evidence that has been provided by Giglio to date; (2) evidence of Giglio's statements and actions during the relevant time period; and (3) Dr. Choi's extensive knowledge, training, and experience as a forensic and interventional neuropsychiatrist with a PhD in Neuroscience, which includes his knowledge and review of peer-reviewed academic literature and studies and widely-accepted scientific principles, research, methodologies, and data in his fields of expertise. Exhibit A at 4-5. As a result, Dr. Choi's opinions and anticipated testimony are "based on sufficient facts and data" and are "the product of reliable principles and methods" under Rule 702.

**D. Dr. Choi's Testimony is Relevant**

As an initial matter, the government does not intend to introduce Dr. Choi's testimony if there is *no* evidence or mention at trial of Giglio's stroke or other cognitive injuries or mental conditions. The government does not intend to introduce any such evidence itself and is concurrently filing a motion in limine to exclude any such evidence, references, or argument. *See* U.S. Mot. in Limine No. 2. However, in the event that Giglio introduces any such evidence to suggest to the jury that he lacked the requisite mental state for his charged offenses, or for a true threat, because of his stroke or other mental conditions, Dr. Choi's anticipated testimony would be directly relevant at trial to help the jury understand how to evaluate those claims and to rebut any inaccurate inference or argument raised by such evidence.

Giglio claims in his motion that "the defense has no plans to introduce *expert testimony* on Mr. Giglio's mental state," though his filings so far indicate that he likely intends to introduce evidence of his stroke or other mental conditions through lay testimony and even unqualified testimony through his computer scientist expert on the "psychology" behind Giglio's actions. To be clear, Giglio does not need to present "expert testimony" to raise or argue the inference that his stroke or other mental conditions impaired his ability to possess the requisite mens rea—such as, his intent to impede or influence a federal official for Count One, or his intent, knowledge, or awareness of the threatening nature of his communications. Rather, by simply mentioning or eliciting lay evidence of Giglio's stroke or other cognitive injuries, Giglio can easily—and improperly—lead the jury to believe that Giglio had a "mental disease," "defect," "or other mental condition bearing on . . . the issue of guilt"—and more specifically, his mens rea for the charged offenses. Fed. R. Crim. P. 12.2(b). This is precisely the type of Rule 12.2(b) defense that Giglio was required to provide notice in order to raise at trial, but clearly has not. In the same vein, the same lay testimony or claim that Giglio had a prior stroke, or any other cognitive injury or defect, could also improperly suggest to the jury that Giglio was "unable to appreciate the nature and quality or the wrongfulness of" his threatening communications as a result of his cognitive injuries—which is essentially an insanity defense (as defined in 18 U.S.C. § 17), of which Giglio was required to provide Rule 12.2(a) notice in order to raise at trial.

As the government will argue in its anticipated motion in limine to preclude evidence of Giglio's

stroke or other cognitive or mental conditions, such evidence and references should be excluded because (1) Giglio failed to provide required notice of the Rule 12.2 defenses that such evidence would suggest to a jury; and (2) his attempt to present such evidence to the jury—particularly through the testimony of lay or expert witnesses who do not have the specialized knowledge to explain how brain injuries or mental conditions actually affect a defendant's mental state—would unfairly circumvent the purpose of Rule 12.2, while confusing the issues for the jury. If the Court grants the government's anticipated motion to exclude such evidence, and the defense follows the Court's ruling at trial, the government will have no need to call Dr. Choi. However, to the extent the Court ultimately allows Giglio to present any such evidence regarding his stroke or cognitive conditions, it should also allow Dr. Choi's testimony, which is directly relevant to (1) rebut Giglio's claims and any improper inferences or inaccurate lay assumptions regarding his stroke or other mental conditions, and (2) to provide the jury a helpful framework and information to understand and evaluate the evidence regarding the impact of Giglio's stroke or other mental conditions on his mens rea. As some examples from Dr. Choi's preliminary report, his testimony will help the jury understand how and when a stroke or brain injury can impact one's ability to form intent, control impulses, and/or understand the nature and quality of one's actions. Dr. Choi's anticipated testimony also provides opinions and observations specific to this case that are helpful to the jury—i.e., the scientific and medical explanation for why Giglio's left pontine stroke would not normally result in cognitive impairment, but only motor impairment, or what the evidence of Giglio's conduct and pattern of behavior indicates with regard to his cognitive abilities from a medical and scientific perspective.

In sum, assuming Giglio introduces evidence of his stroke at trial (and in light of his apparent intent to do so), Dr. Choi's anticipated testimony will be directly relevant under Rules 702 and 401 because it will help the jury understand this evidence and determine a fact at issue in the case—i.e., Giglio's mens rea.

## IV. CONCLUSION

For the reasons above, the Court should deny Giglio's Motion to Exclude Dr. Choi. Alternatively, because the basis for his motion depends largely on the outcome of the government's motion in limine to exclude evidence of Giglio's stroke and mental conditions, the government respectfully requests that the

Court defer ruling on this motion until it has ruled on whether, and to what extent, it will permit Giglio to present evidence of his stroke and mental conditions at trial.

DATED: November 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ANNE C. HSIEH
AMANI S. FLOYD
Assistant United States Attorneys